George K. Shoenberger and John C. Vaughan *vs*, Linford Mount and others.

In Special Term, March, 1855.—SPENCER, J., presiding.

GEORGE K. SHOENBERGER AND JOHN C. VAUGHAN, *vs.* LINFORD MOUNT, AND OTHERS.

A second mortgage of chattels conveys only an equitable title, and the mortgagee takes it subject to all equities which may exist against the mortgagor.

A lease containing the following clause, "The furniture of the house to be held as security for the rent. Messrs. Little & Co. hold now a chattel mortgage on it, and they agree to this arrangement," is not a mortgage within the act, and need not be filed with the Recorder.

When a lien for rent is reserved in a lease on chattel property, and a mortgagee, prior in time to the lease, assents that his mortgage may be postponed to such lien; and, subsequently, the owner of the chattels gives a second mortgage on the same property. Held : That the landlord is to be first paid ; 2nd, the first mortgagee is to be paid in full; and if any is left, it is to be applied on the second mortgage.

This case came up on a motion to distribute the proceeds of sale of certain chattel property, made under a former order of the Court.

It appeared that in August 1852, Linford Mount, then in possession of the Henrie house, as tenant of the plaintiffs, executed a mortgage upon all the furniture and stock belonging to said house, to the defendants Little & Co., to secure a debt due them of $3,000. On the 3rd day of January, 1853, the plaintiffs and Linford Mount entered into an agreement under seal for a continuance of the lease of the Henrie house to Mount, for the term of three years, at the annual rent of $3,000, payable monthly: by the sixth article of which it was provided as follows,

"The furniture of the house to be held as security for the rent. Messrs. Little & Co. hold now a chattel mortgage on it, and they agree to this arrangement." On the back of the lease was a memorandum to this effect:

"We hereby agree that article sixth shall bind us, and

that the furniture, so far as our mortgage is concerned shall be held as security, in preference to it."

R. A. LITTLE & Co.

The agreement between the plaintiffs and Mount was never recorded nor filed with the County Recorder as a chattel mortgage. The mortgage of Little & Co. was duly filed with the Recorder, and regularly refiled at the end of each year, until the 20th day of August, 1854, at which time it was cancelled, and a new mortgage executed for the balance then due, say $1,500; which was likewise duly filed in the Recorder's office. On the 30th day of September, 1854, Linford Mount executed another mortgage upon the same property, in favor of his brother, Tunis Mount, to secure $4,000, borrowed money, Linford, then, and up to the time of sale, being in possession of the house and furniture, conducting business as usual. This latter mortgage was taken without any actual notice of the plaintiff's lien.

There was due to the plaintiffs on account of rent accrued under the lease, since the taking of Little & Co's last mortgage, $910, besides interest; to Little & Co. on their mortgage $1410; to the representatives of Tunis Mount, $4,000 and interest; and the proceeds of sale, for distribution, amounted to only $1,875; all the mortgaged property being sold.

SPENCER, J.

1. The agreement contained in the lease from Shoenberger and Vaughan to Mount, created an equitable lien upon the furniture, in their favor, for the amount of rent due them; certainly as against Linford Mount. To the existence of this lien, in preference to their original mort-

gage, Little & Co. gave their express assent; and are as much bound by it as Mount himself. Between these parties therefore, Shoenberger and Vaughan have clearly a superior equity, unless the taking of a new mortgage by Little & Co. and releasing the old one, put them in a better position than they occupied under their first mortgage. But the taking of a new mortgage for the *same debt*, could not produce such a result. They had assented to be postponed for that debt to the lien of Shoenberger and Vaughan; and should not be allowed by any mere contrivance of their own in the taking of a joint security to acquire a priority which had been voluntarily relinquished, and but for the relinquishment of which, Shoenberger and Vaughan would probably not have continued the lease to Mount. As against them, Little & Co., in respect to this junior security, cannot be said to be purchasers or mortgagees in good faith, and within the protection of the "Act requiring mortgages and bills of sale of personal chattels, in certain cases, to be filed with the township clerk (or county recorder)." 2 *Curwen*, 1240.

2. As between Little & Co. and Tunis Mount, the former have, at least, an equal, if not the better equity, accompanied with the legal title to the property in dispute. Their mortgage, being deposited with the Recorder of the county, was in all respects valid; and was one of which, in contemplation of law, Tunis Mount had notice, at the time of taking his mortgage. He cannot, therefore, be said, in any sense, to have an equal equity with them, and should not compel them to part with the legal title to any of the property, until their whole debt shall have been paid.

3. But it is claimed, on the part of Tunis Mount, that inasmuch as the lien of Shoenberger and Vaughan was not filed in the Recorder's office, it was *void* by the Statute (above referred to) as against his mortgage; and that upon the redemption by him of Little & Co.'s mortgage, he should have a right by his own, prior to the lien of Shoenberger and Vaughan. Since, therefore, he might *redeem*, and then take the whole fund, the law, *to avoid circuity*, should take the fund at once, apply so much as would be necessary to pay off Little & Co., and appropriate the residue to Mount.

It is obvious, however, that the clause in the lease from Shoenberger and Vaughan, above quoted, did not operate in law as a mortgage, nor as a conveyance by way of mortgage, of the property in question; and was not, therefore, within the provisions of the Statute regulating mortgages and bills of sale of personal property. It did not assume to convey the property itself, either absolutely or conditionally; nor did it create so much as a *legal lien* upon it; because *possession* is of the essence of a *legal* lien. It amounted to nothing more than a lien in *equity*, or, perhaps, more properly speaking, it was a *declaration of trust* on the part of Mount, that he held the property for Shoenberger and Vaughan, as security for the accruing rent. 2 *Story* R. 565; 1 *Ves. jr.* 478; or rather, a *joint* declaration of such trust by both Mount and Little & Co.; the latter of whom then held the legal title to the property, by virtue of their original mortgage.

Laying aside the Statute, as not applying to such a case, how does the matter stand between the parties upon general principles of law and equity? By the mortgage to Little & Co., the *legal title* to the property was vested

72

in *them*, subject, in their hands, to the trust in favor of the plaintiffs. This title remained in full force up to the time of sale, under the order of the Court. The subsequent mortgage to Tunis Mount conveyed no title *at law*, in the property, which could have been asserted against any one except Linford Mount; and against him upon the principle of *estoppel* only. It was but a mortgage of an *equity of redemption*. Little & Co. were the only persons entitled to the *possession* of the property, or to maintain any action at law in respect to injury done to it, by a third person. And had the plaintiffs taken possession of it, for the purpose of making good *their right*, Tunis Mount could not have brought trover, replevin, or any other common law action, (before the adoption of the Code,) for the supposed injury done to their title. *A fortiori* he could not have brought such an action against Little & Co. who took possession for the same purpose. As against the latter, his only remedy would have been in *equity*. But a Court of Equity would not compel Little & Co. to relinquish the legal title, until they had fully discharged the trust in their own hands; unless equity, as between Tunis Mount and the plaintiffs, required it. So far, however, as the equities between these parties are concerned, they are equal in *right*; and those of the plaintiffs being prior in *time*, are entitled to the preference.

We are of opinion, therefore, that the plaintiffs are entitled to receive the amount found due them for rent under their lease; and that the residue of the fund should be paid to Little & Co.

Judgment accordingly.

MILLS & HOADLY, for plaintiffs.

MALLON, for Little & Co.

R. D. & J. H. HANDY, for T. Mount.

Elijah G. Barney *vs.* New Albany & Salem Railroad Co.

In Special Term — June 1855.

GHOLSON, J. presiding.

## ELIJAH G. BARNEY *vs.* NEW ALBANY & SALEM RAILROAD COMPANY.

Where process issues against a foreign corporation, and the sheriff returns that he served a certified copy of the summons on one of the directors personally; held, that this was an insufficient service.

In no case can a foreign corporation be served with process in the mode prescribed by § 66 of the Code.

Unless a foreign corporation has within the State a managing agent, for the ordinary transaction of its business, it cannot be held liable in our Courts by any proceeding *in personam.*

Upon the summons issued in this case, the sheriff endorsed a special deputation to Joseph Bruen, to serve the writ on the defendant. The affidavit of the special deputy stated, "that he served a certified copy of this summons on Jesse G. Brown, one of the directors of the New Albany and Salem Railroad Company personally." The sufficiency of this service was submitted to the Court with the suggestion that it could be so amended as to show that Brown was a financial agent of the defendant, a foreign corporation attending to business of that character in the city of Cincinnati, and that no other officer of the company could be found within the jurisdiction of the Court.

GHOLSON, J.

There are two sections of the Code, which appear to have been intended to regulate the service of process on corporations, of the character of the one sued in this action. Section 56, which appears to be intended to provide for domestic corporations, authorizes the service upon the president, mayor, chairman of the Board of Directors, or trustees, or other chief officer. If such chief officer

Corwin & Probasco, for plaintiff.