WILLIAM H. LYON, JAMES O. CARPENTER, AND JOSEPH H. T. MARTIN v. SILAS L. BALLENTINE AND JAMES K. BURNHAM, GARNISHEE DEFENDANTS.

*Chattel mortgage—Time of payment—Garnishment—Equity.*

1. A chattel mortgage may be given to two or more creditors to

secure several debts, and either mortgagee may foreclose for his claim, or they may foreclose jointly.

2. A mortgage given by mistake for more or less than the actual indebtedness intended to be secured, if no fraud or deception was intended by either party, is not thereby invalidated.

3. It is competent for creditors to take a mortgage subject to a prior one properly made and executed.

4. A breach in *any* of the conditions of a chattel mortgage will authorize the seizure of the property and foreclosure of the mortgage.

5. Where a chattel mortgage specifies no *time* for payment, the debt secured thereby is due without demand of payment, and the mortgage can be foreclosed *immediately*.

6. A stock of goods was seized by the sheriff under a chattel mortgage executed by the owner to a firm, and afterwards a subsequent mortgage on the same property, securing two firm debts, was delivered to the same officer. Before a sale, the property still remaining in the owner's store, a garnishee summons was served on one of the *first* mortgagees, and on a member of one of the *second* mortgagee firms. No claim was made of any indebtedness from either firm to the mortgagor, or of any joint *actual* possession of the property by the mortgagees.

*Held*, that the case falls within former decisions of the Court, and that the garnishees cannot be held.

7. Garnishee proceedings are purely statutory, and are based upon contract relations, or equities growing out of or created by such relations; and the statutory forms of action under which they may be prosecuted have little or nothing to do with the true character and relation existing between the parties. The garnishee defendants cannot be held for property of the principal defendant in their possession as for a *wrong*, unless such possession is *wrongful* as between them and the principal defendant at the *time* the writ is served, no matter in what *form* of action the statute may authorize the proceeding to be prosecuted, or the declaration permitted may indicate.

8. While the statute authorizes a determination whether the garnishees' holding of property shall be held void as against the plaintiffs in the principal suit, though in good faith and valid as between the garnishees and principal defendant, the proceedings must be governed by equitable principles, and all persons who have *substantial* interests in the property must be properly before the court.

9. All the members of a copartnership have a right to be heard when the court is asked to deprive them of their property on a charge of fraud, actual or constructive, arising out of their con-

tract relations with others, and any proceeding which does not accord to them this right is illegal, and cannot be sustained.

Error to Bay. (Green, J.) Argued April 29 and 30, 1886. Decided October 14, 1886.

Assumpsit. Garnishee defendants bring error. Reversed. The facts are stated in the opinion.

*Holmes & Collins,* for appellant Silas L. Ballentine.

*Simonson, Gillett & Courtright* (*C. I. Walker,* of. counsel), for appellant James K. Burnham.

*A. McDonell* (*Hatch & Cooley,* of counsel), for plaintiffs.

SHERWOOD, J. From the record in this case it appears that for some time prior to 1880 the principal defendant, Marontate, was in the employ of Silas L. Ballentine & Co., at Port Huron, the defendant Ballentine being a member of that firm; that in that year Marontate engaged in general merchandise business at Bay City, commencing with a capital of his own not exceeding $1,000, and that his first purchases of goods to stock his store were made, beyond his capital, of Ballentine & Co., on credit. He continued his business, and largely increased the same, a part of the time occupying two stores, until December, 1884; during all of which time Ballentine & Co. continued to be his creditors, and he also became largely indebted to others, among whom were W. D. Robinson & Co., James K. Burnham & Co., Edson, Moore & Co., and the plaintiffs in this case, the indebtedness to the latter being at the date last mentioned about the sum of $6,857.32.

It further appears that on the fourth day of December, 1884, Morontate's entire liabilities were fully equal to, and perhaps greater than, the value of his entire stock of goods, it aggregating between $35,000 and $40,000; that at

this time Marontate executed a chattel mortgage for $12,000 to Ballentine & Co., on his stock of goods, to secure them, and placed the same on file in the proper office. He then telegraphed Ballentine & Co. what he had done, and Ballentine came to Bay City, and received a duplicate of the mortgage.

J. K. Burnham & Co., on being advised the same day of the existence of the mortgage through the commercial agency, at once sent their agent to Marontate, and he asked for a mortgage to secure the Burnham debt; this being refused by Marontate unless the agent would allow the Robinson & Co. claim to be included. Those terms were accepted, and a mortgage executed to James K. Burnham & Co. and to W. D. Robinson & Co., covering the entire stock of goods, to secure both debts, amounting to the sum of $9,775.19, and duly filed.

On the next day Marontate executed a third mortgage upon the same goods to Edson, Moore & Co. and the plaintiffs, to secure their debts, and on the same day Ballentine placed in the hands of the sheriff of Bay county Ballentine & Co.'s mortgage, for foreclosure under the power contained therein. At the same time Burnham placed in the hands of the sheriff the Burnham & Co. mortgage, with instructions to foreclose the same for the mortgagees therein named, and the property was advertised for sale on both mortgages at the same place, on the thirteenth of December, at 11 A. M. on the first, and at 9 A. M. on the second.

The goods were sold under the Burnham and Robinson mortgage subject to Ballentine & Co.'s mortgage, which was stated to be $11,207, and Day, Campbell & Co., of Detroit, became the purchasers at such sale, at the sum of $3,100.

On the morning of the day of the sale of the property, and before it took place, the writ of garnishment in this

case was served on defendants, Ballentine and Burnham.

The affidavit upon which the writ was issued was made by John C. McLaughlin, agent of the plaintiffs; and charges that Silas L. Ballentine and James K. Burnham had "property, money, goods, chattels, and effects in their hands and under their control belonging to the principal defendant, Marontate," as he believed and had good reason to believe.

The garnishee defendants filed their separate disclosures in writing, and were separately examined under the statute. At the instance of the plaintiffs, a statutory issue was framed for trial of the matter between the plaintiffs and garnishee defendants, and a trial thereof was had before Judge Green, by jury, in the Bay circuit, which resulted in a verdict for the plaintiffs for the full amount of the judgment recovered in the plaintiffs' suit against the principal defendant, being $6,857.32.

The garnishee defendants remove the case into this Court by writ of error for review.

The record is full, and has been examined with care, but we do not think this judgment can be sustained.

An actual *bona fide* indebtedness from Marontate to James K. Burnham & Co. and to W. D. Robinson & Co. is not disputed or questioned, nor that it was intended to cover the amount owing to both firms in the mortgage they received. It is not claimed that this mortgage was defective in form, or in its execution.

That a chattel mortgage given to several persons jointly may be made to cover separate debts is settled in this State in *Adams v. Niemann,* 46 Mich. 135; and that either mortgagee may enforce his own claim by foreclosure of the mortgage must, I think, be conceded on authority (Herm. Chat. Mort. 357; *Burnett v. Pratt,* 22 Pick. 556; *Gilson v. Gilson,* 2 Allen, 115); and such mortgage may

be foreclosed by the mortgagees jointly. *Wheeler v. Nichols,* 32· Me. 238; *Howard v. Chase,* 104 Mass. 249.[1]

If the mortgage, by mistake or want of knowledge at the time, has been given for more or less than the actual indebtedness, and no deception or fraud was intended by either party, it will not have the effect to invalidate the mortgage. Jones, Chat. Mort. § 92; *Willison v. Desenberg,* 41 Mich. 156; *Wood v. Scott,* 55 Iowa, 114; *Kalk v. Fielding,* 50 Wis. 339; *Strauss v. Kranert,* 56 Ill. 254; *Blakeslee v Rossman,* 43 Wis. 116, 123.

The prior mortgage given to Ballentine & Co. seems to have been properly made and executed, and it was competent for the second mortgagees to take theirs subject to the Ballentine mortgage; and such was the fact, as shown by the record. Jones, Chat. Mort. § 492; *Smith v. Smith,* 24 Me. 555; *Shoenberger v. Mount,* 1 Handy, 566; *Treat v. Gilmore,* 49 Me. 34; *Tuite v. Stevens,* 98 Mass. 305; *Newman v Tymeson,* 13 Wis. 172.

The mortgages taken by J. K. Burnham & Co. and W. D. Robinson & Co., and by Ballentine & Co., were both duly filed as soon as made, and were in the·usual form, authorizing possession to be taken of the property by the mortgagees, and sale thereof to be made, as soon as condition broken.

A breach in any one of the conditions entitled such possession to be taken, and foreclosure of the mortgage to be made, by the mortgagee. *Leland v. Collver,* 34 Mich. 418; *Cassel v. Cassel,* 26 Ind. 90; Jones, Chat. Mort. § 760.

These mortgages specified no time of payment, and were therefore due without demand of payment, and could be foreclosed immediately. *Eaton v. Truesdail,* 40 Mich. 1; Jones, Chat. Mort. § 770; *Dikeman v. Puckhafer,* 1 Abb. Pr. (N. S.) 32; *Howland v Willett,* 3 Sandf. 607; *Farrell v. Bean,* 10 Md. 217.

---

[1]See *Walker v. White,* 60 Mich. 427 (head-note 1).

The mortgage given to Ballentine & Co. contained no illegal provision. It was in the usual form, and properly executed. It was due by its terms, and the testimony shows it was unpaid. There was nothing on its face showing anything more than the ordinary security given upon personal property to secure *bona fide* indebtedness of the mortgagor, and the same may be said of the Burnham mortgage.

Under these circumstances Ballentine & Co. placed their mortgage in the hands of the sheriff of Bay county for foreclosure, and he seized the goods therein described by virtue thereof; and Burnham & Co. and Robinson & Co. placed their mortgage also in the hands of the same sheriff, with instructions to foreclose the same for them; and it was while the property was in this situation that the garnishee writ was served upon these defendants.

The property had never been in the actual possession of either of the defendants, but was in possession of the sheriff at the time the writ was served, and had never been removed from Marontate's store.

The defendants had no interest whatever in the goods, except as members of their respective firms. The indebtedness for which the mortgages were given belonged to three different firms, the claim for each being for different amounts, and neither firm having any connection whatever with the others.

It is not claimed or pretended that either of these three firms mentioned in these two mortgages owed Marontate anything when the writ in this case was served, nor that either or all or any two of the firms had any joint actual possession of the property, nor that the garnishee defendants held any property for which they were jointly liable to Marontate, the principal defendant. This being so, the case falls clearly within the decisions of this Court that, in such cases, the garnishees cannot be held. There was

no joint indebtedness from Marontate to the defendants, Burnham and Ballentine, in regard to which they were acting at the time. The proceeding cannot, under such facts, avail anything for the plaintiffs. *Ball v. Young,* 52 Mich. 476; *Ford v. Detroit Dry Dock Co.,* 50 Id. 358.

Really, there was no joint possession of the property taken in this case. The possession was taken by Ballentine & Co., and while thus being held it was sold under the Burnham mortgage subject to Ballentine & Co.'s interest.

These garnishee defendants could not be proceeded against jointly under the statute. Garnishee proceedings are authorized by statute alone, based upon contract relations, or upon equities growing out of or created by such relations. The form of the action adopted by the statute, under which the garnishee proceedings may be prosecuted against defendants, has little or nothing to do with the true character and relation existing between the parties. The garnishee defendants cannot be held for property of the principal defendant in their possession as for a wrong, unless their possession was wrongful as between them and the principal defendant at the time the writ was served, no matter in what form of action the statute may authorize the proceeding to be prosecuted, or the declaration permitted may indicate. The Legislature cannot make that a wrong which the Constitution says shall not be.

It is true that, under this statute, the Legislature has authorized the court in this proceeding, where it is properly commenced and the proper parties are before the court, to determine whether, under the provisions of the act, the garnishees' holding of the property shall not be held void as against the plaintiffs in the principal suit, even though it may be in good faith and valid between the garnishee defendants and the defendant in the principal suit; and to the extent that this may be done the proceeding must be

governed by equitable principles, and it never can be done in this proceeding, or any other, until all persons, whether natural or artificial, who have substantial interests in the property, have been in some manner properly brought before the court.

Partners have all a right to be heard before a court, when it is sought to deprive them of their property on a charge of fraud, actual or constructive, arising out of their contract relations with others, and any proceeding which does not accord to them this right in a court of justice is illegal, and cannot be sustained.

In no view that I have taken of this case can I discover any ground upon which the judgment can be supported. If the suit had been properly brought, and all the necessary parties had been before the court, I am unable to see how the garnishees could be held. Fraud alone seems to have been relied upon, and I am not satisfied that the testimony offered and received upon that point was sufficient to authorize the court to submit the case to the jury. Other errors are assigned, but the view taken of the case renders it unnecessary to pass upon them now.

The judgment should be reversed.

The other Justices concurred.

