FAULDS et al. v. TILTON et al.

(Circuit Court of Appeals, Seventh Circuit. July 27, 1911.)

No. 1,728.

COURTS (§ 355*)—CONFIRMATION OF SALE—STATE PRACTICE.

Under the rule that federal courts, in respect to the validity of title to real property, will administer the law of the state in which the property is situated where a decree for a sale of real property, entered by the federal Circuit Court without a provision for confirmation, followed the practice authorized by the state courts and the principle embodied in the state law, the deed, without confirmation, gave the purchaser possession and constituted color of title, though the decree, in failing to require confirmation, did not conform to the usual federal practice.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 355.*

Conformity of practice in common-law actions to that of state court, see notes to O'Connell v. Reed, 5 C. C. A. 594; Nederland Life Ins. Co. v. Hall, 27 C. C. A. 392.]

Appeal from the Circuit Court of the United States for the Eastern District of Illinois.

Action by Walter W. Faulds and others against G. Wilse Tilton and others. Judgment for defendants, and complainants appeal. Affirmed.

This case involves the title to about 2,000 acres of land in Vermilion County, Illinois, underlaid with coal. John Faulds, senior, who died intestate in June, 1891, of whom appellants are, among others, heirs at law, was in August, 1868, the owner in fee simple of all the coal and mineral rights underlying these lands, and in possession thereof, having conveyed them on the 28th of August, that year, by trust deed to one Paddock to secure a debt of some $7,000, the trust deed providing that in default of performance of its covenants it should be lawful for Paddock or his successors in trust to sell and dispose of the premises at public auction for cash, having given twenty days' notice of the time and place of such sale. Subsequently, July 4, 1873, a decree was entered in the Circuit Court of the United States for the Southern District of Illinois finding that there was due upon the debt secured by the trust deed the sum of $10,430, and decreeing the foreclosure of the same. This decree further provides that he, the Master of said District, "give twenty days' previous notice of the time, place and terms of said sale, and describe the lands, with reasonable certainty, by publication in one newspaper published in said County of Vermilion, Illinois, and by putting up a similar notice in four of the most public places in said County of Vermilion, and by the circulation of hand bills, in the discretion of said Master. That he execute a deed or deeds to the purchaser or purchasers conveying all the right, title and interest of the said Faulds and Annie, his wife, in said lands, and including the right of dower and homestead, and without redemption. That out of the proceeds of such sale he first pay all the costs and charges of this proceeding, including costs and charges of said sale. That he next pay to said complainant as such assignee for the use of the creditors of Harvey Sandusky said sum Ten Thousand Four Hundred and Thirty Dollars ($10,430.00) with interest from the date of this decree. That the remainder, if any, he

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

report to this Court. It is further ordered and decreed that the said Joseph G. English" (assignee in bankruptcy of Sandusky for whose benefit the trust deed was made) "as such assignee have full right and authority to bid for and take title to any or all of said real estate for the use of said creditors, and report his action therein to the District Court of said Southern District of Illinois. It is further ordered, adjudged and decreed that if said defendants should fail to redeem said real estate, or any part thereof, as first above provided, and a deed should be made therefor to the purchaser or purchasers, then, upon the execution and delivery of such conveyances as aforesaid, the said purchaser or purchasers, his or their representatives or assigns, be let into the possession of said mortgaged premises, and that any of the parties in this cause who may be in possession of said premises, or any part thereof, and any person who, since the commencement of this suit, has come into possession under them, or either of them, on the production of said Master's deed of said premises and a certified copy of the order of this Court confirming the report of said sale surrender possession thereof to such purchaser or purchasers, their representatives or assigns; and on refusal so to do, be considered in contempt of this Court. And that said Master report his proceedings herein to this Court."

September 26, 1874, a sale was made by the Master under this decree. September 28, 1874, the Master filed his report of such sale with the Clerk of the United States Circuit Court for that district. No decree confirming the sale was entered. October 8, 1874, the Master executed the conveyances in pursuance of such sale to the several persons who had become purchasers at the sale (chiefly the owners of the surface) which conveyances were thereafter duly recorded in the recorder's office of the County of Vermilion. Many other issues are made and a large volume of testimony embodying other facts is contained in the record, but the foregoing is all that is necessary to the determination of the case.

The bill of appellants prayed for a decree that the defendants and each of them claiming under the decree of foreclosure "have no estate or interest whatever in all the said lands and premises, to wit: all coal and mineral underlying the surface of lands hereinbefore described, adverse to your orators, and for such other and further relief as the equities of the case may require."

James M. Sheean, Bayard T. Hainer, H. B. Martin, and William L. Cundiff, for appellants.

George G. Mabin, for appellee Church.

Oliver M. Jones, James A. Meeks, and George F. Rearick, for other appellees.

Before GROSSCUP, BAKER, and KOHLSAAT, Circuit Judges.

GROSSCUP, Circuit Judge (after stating the facts as above), delivered the opinion:

The right of the appellants to the decree asked for is based on the fact that the sale by the Master under which appellees claim was not specifically confirmed by the court, the contention being that a judicial sale under a decree of court must be approved and confirmed before it becomes final or conveys title: citing Williamson et al. v. Berry, 8 How. 495, 12 L. Ed. 1170; Chicago & Vincennes Railroad Company v. Fosdick, 106 U. S. 70, 27 L. Ed. 47; Pewabic Mining Company v. Mason, 145 U. S. 364, 12 Sup. Ct. 887, 36 L. Ed. 732; Hart v. Burch, 130 Ill. 426, 22 N. E. 831, 6 L. R. A. 371; Jennings v. Dunphy, 174 Ill. 86, 50 N. E. 1045.

Upon this premise the argument of appellants is that no title to the coal and mineral underlying the surface passed by the decree; that appellees did not by such decree, therefore, come into possession

of the coal and mineral, no actual possession being shown by mining operations; from which it is argued that the twenty years statute of limitations of Illinois, founded upon seizure or possession, and the seven year statute relating to payment of taxes, founded upon actual possession of lands under a claim of color of title, are not applicable. Nor can there according to this argument—the continued possession of Faulds and his heirs being uninterrupted by any mining operations —be said to be laches, notwithstanding that nearly forty years intervened between the alleged sale on foreclosure and the filing of the bill.

The whole argument is founded, of course, upon the premise that the sale without confirmation gave the purchasers neither actual possession nor color of title. This premise, we think, is unsound. Whatever the practice in the Federal Courts, and however erroneous a decree that does not provide for confirmation, the United States Court sitting in Illinois had power to enter such a decree: for at the time the sale took place it was the established rule in Illinois that such confirmation and approval was not a prerequisite to the validity of the title acquired at the sale. Redmond v. Cass, 226 Ill. 120, 80 N. E. 708, turned upon the very decree, sale, and deed now under consideration; and the point was made there, as here, that the absence of specific confirmation invalidated the deed. Deciding that point the Supreme Court of Illinois says:

"The decree directed a sale of the property without redemption and the execution of a deed to the purchaser. The sale was made, a report of the sale was filed, the deed was executed, and the grantee and those claiming under him have been in possession ever since. A purchaser at a sale which has not been confirmed and where no deed has been made acquires no title and is not entitled to insist upon a conveyance until the sale is confirmed. The mere acceptance of a bid conveys no title. Hart v. Burch, 130 Ill. 426 [22 N. E. 831, 6 L. R. A. 371]. But if the terms of the decree have been complied with and there has been neither fraud nor mistake nor illegal practice, the purchaser is entitled to a deed. Where the decree authorizes the making of a deed, and it has been made, it is legitimate evidence of title. Walker v. Schum, 42 Ill. 462. Under the circumstances of this case appellants cannot now be heard to say that there was any irregularity or defect in the proceedings."

Walker v. Schum (decided January Term, 1867) was the expressed law on this subject by the Supreme Court of Illinois at the time the decree was entered and the sale took place; and that case held that when a master's deed was offered in evidence by a plaintiff in an ejectment suit, to be followed with the record and decree under which the sale was made, accompanied with the statement that no decree of the court approving and confirming the sale would be offered, the evidence was admissible, provided the sale was in conformity with the decree, for "the decree is the sentence of the law authoritatively announced, and when obeyed by the Master the legal effect and consequence contemplated by the law are accomplished." And in Miller v. McMannis, 104 Ill. 421, the court said:

"It is also claimed that the decree did not empower the master to make a deed, and hence the deed did not pass the title to the premises. The decree orders the master in chancery to sell the property and take from the purchaser a mortgage on the premises sold, to secure the payment of the pur-

chase money. Whether'an order to sell, standing alone, would imply authority to make a deed, need not here be determined, as the order in the decree directing the master to take a mortgage on the premises sold would seem to leave no room to doubt the authority to make a deed. The clear implication from the authority to sell and take a mortgage is, that the master, in making sale, should deed the premises.

"In conclusion we are of the opinion that the decree and the deed read in evidence were sufficient, in this collateral proceeding. to prove that whatever title the plaintiffs originally had to the premises, passed from them under the sale made .by the master in chancery."

"In England," says the Court, in Jackson v. Warren, 32 Ill. 331, "the practice is to keep the biddings open at a Master's sale so that any person may advance on a bid received by the Master, which he reports to the court, so until a final confirmation of the sale no one can be considered the purchaser but a mere bidder; but under our practice. at such sales·a valid and binding contract of sale is made when the hammer falls; in the absence of fraud, mistake or some illegal practices, the purchaser is entitled to a deed on the payment of the money. A person holding such a deed is prima facie the owner of the land described in it."

Manifestly the United States Circuit Court for the Southern District of Illinois, entering this decree, followed this practice authorized by .the state courts and the principle of Illinois law relating to the judicial sale of real estate, embodied in this cause. That being the case, the appellee got possession of the underlying rights by the deed, as also color of title, for in respect to the validity of title to real estate, the administration of the state law, notwithstanding its non-conformity to the usual federal practice, is within the power of the federal courts, the state law in that respect being the law, not only 'in the state courts, but in the federal courts as well: Suydam v. Williamson, 65 U. S. 427, 16 L. Ed. 742; Thompson v. Tolmie et al., 2 Pet. 157, 7 L. Ed. 381. There are many cases to this effect; the rule is well established and universal.

The decree appealed from is affirmed.