No. 10,141.

METROPOLITAN STATE BANK v. WRIGHT.

Decided October 2, 1922.

Action in conversion.    Judgment for plaintiff.

*Reversed.*

1.   CHATTEL MORTGAGE—*Description.*   The mere fact that an indebtedness secured by a chattel mortgage is not described correctly, does not vitiate it as against conflicting rights of a third party, unless the mis-description is of such a serious character as to indicate or to prove that the parties to the mortgage intended to perpetrate a fraud, or was calculated to work a fraud.

2.     *Record—Notice.*  The record of a chattel mortgage is equivalent to actual notice to third parties of what appears on its face, and what the face fairly suggests.

3.     *Future Advances.*  Where a chattel mortgage is given for an indebtedness, a part of which is to be advanced in the future, the amount of such future indebtedness is not essential to the validity of the instrument, but there must be some reference in the mortgage itself to the fact that it is given in part to cover future advances.

4.     *Validity—Third Parties.*  As between a chattel mortgagee and a third party, where circumstances of doubt exist as to whether the mortgage is made, executed and filed strictly within the statute, such doubts will be resolved in favor of the third party, unless there are countervailing equities, upon the ground that the mortgagee, having the power to protect himself fully, and prevent others from being deceived, has not done so.

5.     *Mortgage Debt—Maturity.*  No time being designated when a debt secured by a chattel mortgage is to be paid, it is due at the time of the execution of the note, and the mortgage given to secure it may be foreclosed immediately thereafter.

6.     *Lien.*  Under the facts disclosed in the case under consideration, a chattel mortgagee to preserve his lien as against a third party, must make demand for payment within a reasonable time after maturity, or take possession of the mortgaged property within the time fixed by statute.  On his failure to act, his lien will be postponed to that of a subsequent bona fide encumbrancer who levies upon it before the mortgagee takes possession.

7.     *Execution Levy—Priority of Lien.*  As between a chattel mortgage and levy under execution, where the mortgagee neglects to take possession of the property within the statutory period after maturity of the debt evidenced by the note secured in the mortgage, and before a writ of execution is levied, the lien of the execution levy will be superior to that of the mortgage.

*Error to the District Court of the City and County of Denver, Hon. Charles C. Butler, Judge.*

Mr. WILLIAM H. DICKSON, Mr. A. B. MANNING, Mr. ROLLIN A. YOUNG, for plaintiff in error.

Mr. J. W. STEPHENSON, Mr. WALTER M. APPEL, for defendant in error.

*En banc.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

THE complaint states that to the defendant in error, Wright, on June 7, 1920, John A. Henry executed his promissory note in the sum of $1500, payable four months after date, and to secure its payment gave a chattel mortgage to Wright upon certain personal property which he then owned. A payment of $400 was endorsed on the note. On October 7, 1920, when it is alleged the note became due, and all thereof not having been paid, the defendant in error made demand upon Henry for delivery to him of the mortgaged property to be sold and the proceeds applied upon the note. Henry could not, and did not, deliver the property because, as he said, the defendant bank, on October 1, 1920, had levied an execution upon the property, under its judgment against Henry. The plaintiff alleges that the mortgaged property was of the value of $1500, and the judgment demanded was for a conversion thereof by the bank to plaintiff's damage in that sum.

The plaintiff Wright contended at the trial that the lien of his mortgage was superior to the lien created by the levy of the writ of execution, while the bank asserted the superiority of its lien. The trial court found in favor of the plaintiff and gave judgment for him in the sum of $716.27, which it found to be the net value of the property converted by the defendant. The facts upon which this case must be decided are not in serious dispute.

The mortgage recites that it was given to secure the payment by Henry of a promissory note in the sum of $2,000, and no due date or maturity of the note secured was stated in the mortgage. The note introduced in evidence, as the one which the mortgage secured, is for $1500, payable four months after date, the date being June 7, 1920. The defendant bank says that this mis-description in the mortgage of the note which was given, and the failure of the mortgage to state when the note became due, and the fail-

ure of the plaintiff to take possession of the mortgaged property until after the expiration of more than thirty days after the note, as described in the mortgage, became due, subordinates the lien of the mortgage to the levy of its execution under a judgment.

The mere fact that the indebtedness secured by a mortgage is not described correctly, does not vitiate it, as against the conflicting rights of a third party, unless the mis-description is of such a serious character as to indicate or to prove that the parties to the mortgage intended to perpetrate a fraud, or was calculated to work a fraud. Such a mis-description as appears here, however, may be, in connection with further non-compliance with our chattel mortgage act, treated as evidence of a fraud. Defendant had no actual knowledge of the mortgage. The chattel mortgage, as already stated, did not furnish any information whatever as to when the secured indebtedness became due. The record of it is equivalent to actual notice to third parties of what appears on its face and what the face fairly suggests. *Foster v. Cramer,* 19 Colo. 405-7, 35 Pac. 747.

The defendant in error appeared to resist in a typewritten brief the application of plaintiff in error for a *supersedeas,* which application was granted. He has not filed a brief on the final hearing. In the typewritten brief referred to, he takes the position that this *Foster* case is authority for the proposition that, where there is something on the face of the recorded mortgage to suggest or indicate that there is a mis-recital as to the due date, or no recital at all, it is the duty of a third party, claiming conflicting rights, to make diligent inquiry to learn the facts. Such was the declaration of the *Foster* case under its facts. The case is authority for the proposition that one, who does not have actual knowledge of the existence of the mortgage, is not charged with the duty of making any inquiry that is not suggested by the face of the instrument itself as recorded.

The court held in that case that the recitals of the mortgage constituted a transaction so at variance with the ordinary course of business as to excite a doubt of the cor-

rectness of such recitals. The facts of that case, however, are essentially different from the one at bar. There the mortgage was dated, as in this case, on the day it expired, and that is the only similarity between that case and the instant one. In the *Foster* case the mortgage, in addition to the mis-recital, was acknowledged and filed for record as of a date prior to its execution, and that it matured several months before the date of its execution, and the third party asserting its invalidity had actual knowledge of its existence. It also appears that a prior mortgage, for the same amount, covering the same property, and between the same parties, and executed a year previous, would expire on the same day, and the mortgage was not attacked on the ground that it was not made in good faith.

The court said in its opinion that the trial court seemed entirely to overlook the evidence showing actual knowledge on the part of the third party of the existence of the mortgage itself, and for that reason said that the duty of inquiry devolved upon him in addition to being charged with notice of what the mortgage, as recorded, exhibited on its face.

In this case the good faith of the mortgagee is attacked. The third party had no actual knowledge of its existence. There was nothing on its face that even suggests a probability that the date of maturity was otherwise than what the law implies where no date is expressed. In addition thereto, this mortgage, as appears from the testimony at the trial, was given to secure an indebtedness, part of which was to be advanced in the future. While, in such a case, the amount of such future indebtedness is not essential to the validity of the instrument, there must be some reference in the mortgage itself that it is given in part to cover future advances. As a matter of fact in this case only $1500 was ever advanced to the mortgagor, and of that sum $400 was endorsed as a payment at the time of the execution of the instrument. There was, therefore, advanced by the mortgagee only $1100, while the mortgage itself says that the mortgage debt was $2,000. The note

produced at the trial as the one which was secured, was for $1500, payable four months after date.

Taking into consideration all of these circumstances, we are clearly of the opinion that there was nothing on the face of the recorded mortgage to put the defendant upon inquiry, and that there were enough suspicious circumstances in connection with this transaction to warrant the conclusion that this mortgage, as against third parties, and the note secured thereby, became due and payable at the time of its execution, and that possession of the property, to preserve the lien as against third parties, should have been taken on or before the expiration of thirty days from its date. We think ample authority for this conclusion exists as a brief review shows.

It is said in 11 Corpus Juris, p. 474, that in general it is not necessary to state the time for performance of the mortgage obligation, although it was held in *Snite v. Gehrke,* 189 Ill. App. 382, that a description of the mortgage which states no time for the maturity of the mortgage debt, is a defect of which a third party may take advantage.

In Cobbey on Chattel Mortgages, volume I, section 120, the author says that the mortgage, in describing the instrument which evidences the debt, should state the amount, date, time of maturity, rate of interest, and character of the instrument in such a way that there can be no question as to the instrument it is intended to secure. And at section 70 the author says that as between the mortgagee and a third party, where circumstances of doubt exist as to whether the mortgage is made, executed and filed strictly within the statute, such doubts will be resolved in favor of such third party, unless there are countervailing equities, upon the ground that the mortgagee, having the power to protect himself fully, and prevent others from being deceived, has not done so.

Our chattel mortgage act in force at the time this mortgage was given, is found in the Session Laws of 1917, p. 126. No provision thereof expressly requires that the date of the mortgage debt shall be given in the mortgage,

but in sections 3, 7, 10 and 11 of the Act there are certain provisions for the extension of a mortgage, continuing the lien thereof so long as any portion of the mortgage debt remains unpaid, and there is a classification of mortgages depending upon the amount thereof and the time that they run, and other similar provisions, all of which indicate, and are upon the assumption, that the maturity of the mortgage debt should be set forth in the mortgage; otherwise there would be no data therein for giving effect to these various provisions of our statute. So that it would appear that there are strong grounds for holding that a mortgage, in describing the mortgage debt, should give the date of its maturity.

Section 11 of our Act provides that when it has been extended in accordance with the provisions thereof, a paper writing evidencing the extension must be filed with the county clerk and recorder; and there is also a requirement that, in case of an extension, it must be for some definite period of time not exceeding two years, and that the period of time shall be expressly stated. This provision would seem to contemplate, though the mortgage statute does not expressly so say, that the maturity of the debt, as originally agreed upon, should also be stated in the mortgage. The exigencies of this case, however, do not demand a positive ruling upon the effect of absence of a due date, or the misrecital of the debt secured, but these defects may properly be considered in connection with other matters.

It will be observed, as already stated, that this mortgage says that the mortgage debt is $2,000, and its date is given as June 7, 1920, but no specific time is mentioned for the maturity of the debt. The general rule applicable to an instrument of this character is, that, no time being designated when it is to be paid, the debt is due at the time of the execution of the note, and a mortgage given to secure the same may be foreclosed immediately thereafter. Such we find to be the decisions upon the point. *Bearss v. Preston,* 66 Mich. 11, 32 N. W. 912; *Eaton v. Truesdail,* 40 Mich. 1, 6; *Lyon v. Ballentine,* 63 Mich. 97, 29 N. W. 837,

838, 6 Am. St. Rep. 284; *McGraw v. Bishop*, 85 Mich. 72, 48 N. W. 167.

Section 4470 of our negotiable instrument act (R. S. 1908), in harmony with the cited cases, says that a negotiable instrument is payable on demand, "in which no time for payment is expressed." Section 4533 says, presentment for payment is not necessary in order to charge the person primarily liable thereon, as the maker of a note. This mortgage note, not expressing any time for payment, is, therefore, due on demand, but, as against the maker, it is due and payable without demand. The mortgagee payee may not, of course, withhold demand, in order to postpone the time of payment, for the note is due and payable, on its date of extension, without demand as against the maker. If the payee could thus postpone the date of maturity, and so extend the note, and carry with such extension the mortgage security, he could, merely by neglecting a demand on the maker for payment,—which is not at all necessary to charge the maker,—extend the life of a chattel mortgage beyond the period allowed by the mortgage act. No such effect will be given to the mortgagee's indulgence, as it would nullify the very statute which authorizes a record of a mortgage and thereby enables a mortgagee to maintain his lien for a time certain without taking possession of the mortgaged chattel. The true construction, and under the state of facts disclosed, is that, in such a note as this, the mortgagee, to preserve his lien against a third party, must make demand for payment of the mortgage debt within a reasonable time after maturity or take possession of the mortgaged property, and to take possession within a reasonable time,—thirty days thereafter as fixed by our statute,—and on his failure thus to act, his lien will be postponed to that of a subsequent *bona fide* incumbrancer, who levies upon it before the mortgagee takes possession.

In the four cited cases the question was decided where the controversy was between the parties to the mortgage. If there is any difference between those cases and the instant case, there is stronger reason for holding the rule

stated, when the controversy, as here, is between the mortgagee and a third party. A third party, if he examined the recorded mortgage under consideration, would discover that the mortgage debt was a promissory note of $2,000 in which no time for its payment was specified, and he would have the right to conclude, as the law is, that the debt became due upon the execution of the note and the mortgage, and under section 10 of our chattel mortgage act, must be foreclosed in order to preserve this lien as against third parties, not later than thirty days after maturity of the mortgage debt, or within thirty days after the date to which the payment of the debt is extended, in conformity with the provisions of the act. The latest date, therefore, under which the mortgagee here could take possession of the mortgage property, in order to preserve the mortgage lien as against third parties, would be thirty days after the date of the execution of the note on June 7, 1920.

The fact is that the defendant's bank, on October 1, 1920, caused the sheriff of Elbert County, to levy an execution upon this chattel mortgage property which, at that time, was still in possession of the mortgagor, and the plaintiff in this case, the mortgagee, up to that time made no attempt whatever to take possession by reason of the alleged default in payment of the mortgage debt. It was not until October 7, 1920, that the plaintiff attempted to get possession of this property by demanding of Mr. Henry, the maker of the secured note, the property, because of his default in payment. Before that time, however, and on October 1, 1920, the defendant had caused its execution to be levied and the sheriff had taken possession of the same. This attempt of the plaintiff to get possession was too late as against the previous lien acquired by the levy of defendant's writ of execution. The mortgagee, having neglected to take possession of this property for more than thirty days after the maturity of the debt evidenced by the note described in the mortgage, and after the writ of execution was levied and the lien thereof had attached in favor of the defendant, we are obliged to hold, under our previous

decisions, that, while the mortgage remained valid as between the parties, it is not enforcible as a prior lien as against the rights of the defendant. *Owen v. Owens,* 51 Colo. 93, 117 Pac. 134; *Cassell v. Deisher,* 39 Colo. 367, 89 Pac. 773.

The judgment of the district court, being at variance with the foregoing views, must be reversed and the cause remanded, and it is so ordered.

Mr. Chief Justice Scott not participating.