RADETSKY v. GRAMM–BERNSTEIN MOTOR TRUCK CO. BARTER v. SAME. GRAMM–BERNSTEIN MOTOR TRUCK CO. v. QUIAT.

(Circuit Court of Appeals, Eighth Circuit. March 20, 1925. Rehearing Denied May 26, 1925.)

Nos. 6394–6396.

1. Chattel mortgages ⊶291—Foreclosure sale may be effective without confirmation, in absence of requirement therefor in statute or foreclosure decree.

In absence of statutory requirement for confirmation of foreclosure sale, or of provision in decree for report of sale and confirmation thereof, sale may be effective without confirmation.

2. Chattel mortgages ⊶285—Presumed sheriff obeyed directions of decree as to publication of notice of foreclosure sale.

Legal presumption is that sheriff obeyed directions of foreclosure decree as to publication of notice of foreclosure sale.

3. Chattel mortgages ⊶254—Under Colorado statutes, lien of subsequent mortgagee in possession held to have priority over prior chattel mortgage 30 days after default in last installment.

Under C. L. Colo. 1921, §§ 5083, 5085, 5089, 5093, where chattel mortgagee failed to take possession of chattel within 30 days after default in last installment of debt, and no exten-

sion of debt was filed, lien of subsequent mortgagee taking possession had priority, notwithstanding subsequent mortgage recited that it was subject to prior mortgage.

4. Appeal and error ⊶750(5)—Assignments of error held not to present any questions requiring review.

Assignments of error that court erred in receiving verdict, that judgment was against law, and that there was error in overruling motion for new trial, held not to require review of question whether court erred in submitting issue of defendant's liability, in absence of request for instructed verdict, where there was only general exception to instructions.

5. Appeal and error ⊶719(1)—Circuit Court of Appeals has discretion to review questions not properly presented, where verdict and judgment founded on obvious error.

The Circuit Court of Appeals has discretion to review questions not properly presented by assignments of error, where verdict and judgment are founded on obvious error.

6. Chattel mortgages ⊶174(1)—Submission to jury of issue of subsequent mortgagee's liability to prior mortgagee in replevin action for value of truck held error.

Where only issue in chattel mortgagee's replevin action against subsequent mortgagee, who filed general denial, was right to possession of truck and damages for detention, and court directed verdict for transferee of defendant's mortgage, who intervened and claimed possession, held, that court should have directed verdict for defendant, and it was error to submit to jury issue of defendant's liability for value of truck.

7. Chattel mortgages ⊶143—Taking possession by chattel mortgagee cures mortgagor's failure to acknowledge.

Chattel mortgagee, by taking possession of mortgaged property, dispenses with necessity for formal acknowledgment by mortgagor, and under C. L. Colo. 1921, §§ 5083, 5085, 5089, 5093, would have superior right over prior mortgage, which had been due for more than 30 days and had not been extended.

8. Replevin ⊶8(1)—Plaintiff must recover on strength of own title and proof of right to possession.

Plaintiff in replevin action must recover on strength of his own title and on proof of his right to possession, and proof of right to possession in either of two defendants should prevent verdict for plaintiff.

9. Appeal and error ⊶673(2)—Whether foreclosure sale void or voidable, or gave right to accounting, could not be determined when mortgage not in record.

Whether chattel mortgage foreclosure sale was void or voidable, or merely gave injured person right to accounting from mortgagee, because sale was not made at place where property could be seen, and because credit was extended purchaser, could not be considered on appeal, where record contained only portion of mortgage, and it was not shown that mortgage did not provide for such sale.

Stone, Circuit Judge, dissenting in part.

In Error to the District Court of the United States for the District of Colorado; John Foster Symes, Judge.

Replevin action by the Gramm-Bernstein Motor Truck Company against M. S. Radetsky, in which Sam Barter and Simon Quiat intervened. From the judgments, plaintiff, defendant, and intervener Barter separately bring error. Judgment against defendant and intervener Barter reversed, with directions. Judgment for intervener Quiat affirmed.

Arthur R. Morrison, of Denver, Colo., for plaintiff.

Samuel S. Ginsberg, of Denver, Colo. (J. E. Robinson, of Denver, Colo., on the brief), for defendant and interveners.

Before STONE, Circuit Judge, and MUNGER and MILLER, District Judges.

MUNGER, District Judge. An action in replevin was begun by the Gramm-Bernstein Motor Truck Company against M. S. Radetsky, asserting a right of possession to two motor trucks by reason of separate mortgages on these trucks securing the payment of promissory notes given by Swenson to the motor truck company, hereafter referred to as the plaintiff. The two trucks, for convenience, will be designated as trucks No. 15 and No. 65, as they were so identified in the testimony. Radetsky filed a general denial, and pleaded title in one Barter to truck No. 65 and in one Quiat to truck No. 15. Barter and Quiat intervened in the action, and filed general denials to plaintiff's petition, and each alleged ownership of one of the trucks, with some special defenses to the plaintiff's claim. At the close of the evidence the court directed a verdict in favor of Quiat for the return of truck No. 15, and a verdict in favor of the plaintiff as to truck No. 65 and submitted a question of fact to the jury as between the plaintiff and Radetsky, and the jury returned a verdict against Radetsky. From the judgments on the verdicts three separate error proceedings have been prosecuted.

The general facts may be briefly stated. Swenson was engaged in the automobile business at Denver, Colo., and in the course of his business he purchased these trucks from the plaintiff, giving to plaintiff notes secured by mortgages upon the trucks for the balance of the purchase price. Radetsky had assisted Swenson financially in his business, and Swenson later gave Radetsky a mortgage on the trucks to secure his debt to Radetsky. Truck No. 15 was sold by Swenson to Oliver & Oliver, who gave Swenson notes and a mortgage upon the truck and other property in payment therefor. These notes and the mortgage executed by the Olivers were indorsed by Swenson and delivered to Radetsky, who transferred them to Quiat. Quiat began foreclosure proceedings in the state court upon the mortgage, obtained a decree of foreclosure and order of sale, and a sale was had. At the sale Quiat purchased the truck No. 15. This truck was stored at Denver until the plaintiff obtained it by this writ of replevin. Truck No. 65 was kept for a time by Swenson, then it was left in a storehouse owned or managed by Radetsky, and Radetsky undertook to sell it, after advertisement, in satisfaction of the chattel mortgage given by Swenson to him, and Barter claims to have purchased it at that sale, and to have stored it in the storehouse, where it remained until this suit was brought.

Taking up, first, the complaint of the plaintiff against the judgment in favor of Quiat, the plaintiff assigns as error the giving of an instruction to the jury to return a verdict finding that Quiat was entitled to the possession of truck No. 15, and the admission in evidence of a purported bill of sale from the sheriff of Baca county, conveying the title of this truck to Quiat. At the close of the testimony, it was shown by the undisputed evidence that Swenson had given chattel mortgages to Radetsky on the two trucks involved in this case, either on the same day or on the day following the day of the making of the mortgage to the plaintiff. Radetsky had furnished the money to Swenson with which he had begun business, and this mortgage was given as security for the debt owing from Swenson to Radetsky. About two months later Swenson sold and delivered truck No. 15 to Oliver & Oliver. The purchasers gave Swenson two promissory notes, due in 30 and 60 days, to evidence the purchase price, and executed a chattel mortgage to Swenson upon this truck and other property as security for the payment of the notes. Oliver & Oliver removed the truck to Baca county, Colo. Swenson indorsed these notes and delivered them to Radetsky. Swenson testified that it was the understanding of Radetsky and himself that the mortgage was to be foreclosed, and from the proceeds the plaintiff's mortgage was to be paid, and the balance was to apply on the debt of Swenson to Radetsky. This was denied by Radetsky.

Whatever the agreement was between Swenson and Radetsky, it is undisputed that Radetsky transferred the notes of Oliver &

Oliver to Quiat in partial payment for services which Quiat and his firm had performed for Radetsky. Quiat began suit in the state court against the Olivers to enforce the mortgage, obtained possession of the truck, and procured a decree of foreclosure and an order of sale of the mortgaged property by the sheriff of Baca county. The sheriff made a sale of the truck No. 15 to Quiat. The sheriff delivered a bill of sale for the truck to the purchaser, reciting a purchase price of $2,000, and that the sale had been made under the foreclosure proceedings which have been mentioned. The truck was delivered to Quiat, who had it stored in Denver, where it remained until seized in this suit. The plaintiff questions the direction of a verdict in favor of Quiat, and refers to some testimony of Swenson, Radetsky, and others, wherein they had given some legal conclusions and testified to their understanding of the relations of the parties; but none of the testimony impeaches the title of Quiat obtained through the acquisition of the notes and the sale under the foreclosure, nor shows his purchase to have been made for the benefit of any other person.

[1, 2] It is also claimed that Quiat did not obtain title, because the decree directed that notice of the sale be given by publication for 10 days in some newspaper in Baca county, and that there was no proof on file in the foreclosure suit showing that this advertisement had been made, nor had the sale been confirmed by the court. Whether or not the plaintiff may in this way attack the proceedings in the foreclosure suit, or may complain that it was the right of the Olivers, as defendants, to have had the sale confirmed, and to have the notice of sale published for 10 days, as prescribed in the decree, the objections as made cannot be sustained. It is not claimed that the statutes of Colorado require confirmation of such sales, and in the absence of such requirement, or of a provision in the decree for a report of sale and confirmation thereof, a sale may be effective without confirmation. 35 Cor. Jur. 44; Kimple v. Conway, 75 Cal. 413, 415, 17 P. 546; Faulds v. Tilton, 192 F. 297, 300, 112 C. C. A. 555. There was evidence that there was an advertisement of the sale by the sheriff, and it is the legal presumption that the sheriff obeyed the directions given to him by the decree as to the publication of notice of the proposed sale. But whether or not Quiat obtained a perfect title, or whether or not the plaintiff may attack that title in this suit, he obtained possession of the mortgaged property under his mortgage, and held possession at the time this suit was begun, either as a purchaser, or by reason of his mortgage and decree of foreclosure.

[3] The remaining question is whether Quiat was entitled to the return of truck No. 15, because of his possession as a result of his mortgage and the foreclosure proceedings, as against the claim of possession and title asserted by the plaintiff by reason of the mortgage given by Swenson to plaintiff at the time of Swenson's original purchase of the truck. The mortgage given by Swenson to the plaintiff on August 23, 1920, was given as security for the payment of Swenson's promissory note due November 21, 1920. It was recorded in the office of the recorder of the city and county of Denver on August 24, 1920. The mortgage from Swenson to Radetsky was dated August 24, 1920, conveyed both truck No. 65 and No. 15 as security for the payment of Swenson's debt, and contained the provision, "This mortgage is subject to a prior mortgage on each car now of record." The decree in the foreclosure suit by Quiat against the Olivers was dated March 15, 1921, and the bill of the sale by the sheriff of Baca county to Quiat was dated April 4, 1921. The replevin suit of the plaintiff was begun on May 23, 1921.

The statutes of Colorado in force at the time of these transactions declared that no mortgage of personal property should be valid against the rights and interests of third persons, unless possession of the property was delivered to and remained with the mortgagee, or the mortgage was acknowledged and certified and properly filed or recorded, but every chattel mortgage was declared good and valid between the parties until the debt secured thereby was paid or barred by the statute of limitations. When such a mortgage as the one given by Swenson to the plaintiff was properly filed or recorded, it was declared to be valid until the maturity of the last installment of the mortgage indebtedness. Within 30 days after the maturity of the last installment of the debt, the lien of the mortgage could be extended, provided the mortgagee or his assignee should file with the recording officer a sworn statement showing payments made upon the debt and the balance remaining unpaid, and that the debt was still due, and consenting to an extension of the time of payment for a named period of time, not exceeding 2 years. The mortgagee or his agent or attorney was allowed 30 days after the maturity of the debt, or 30 days after the date to

which payment was so extended, within which he could take possession of the mortgaged property and the mortgage was declared good and valid during that period of time as if possession had been taken at maturity. Sections 5083, 5085, 5089, 5093, Comp. Laws Colo. 1921.

It is undisputed that the plaintiff did not take or retain possession of the mortgaged property after the execution of the mortgage, nor did it take possession of the property within 30 days after the maturity of the debt, nor was there any statement filed showing an extension of the time of payment of the debt. Possession of the mortgaged property was taken by Quiat after he began foreclosure of his mortgage and legal possession was retained by him until the property was taken from him in this suit. The property had been stored by and for Quiat in a warehouse which Radetsky managed. Under the statutes of Colorado, which have been mentioned, if there is a failure by a mortgagee of chattels to take possession of the property mortgaged, within 30 days after default in payment of the last installment of the debt secured, and where there has been no extension of the mortgage debt properly filed, the lien of a subsequent mortgage upon the chattels will take priority, provided the junior mortgagee takes possession of the chattels, and this priority of the subsequent mortgage is not affected by the fact that it contains a recital that it was taken subject to the prior mortgage. Stanley v. Citizens' Coal & Coke Co., 24 Colo. 103, 106, 49 P. 35; Cassell v. Deisher, 39 Colo. 367, 370, 89 P. 773; Owen v. Owens, 51 Colo. 93, 94, 117 P. 134; Babbitt v. Bent County Bank, 50 Colo. 258, 261, 108 P. 1003; Metropolitan State Bank v. Wright, 72 Colo. 106, 113, 209 P. 804. See 11 Cor. Jur. 569. The right of possession in Quiat to truck No. 15 was so conclusively established by undisputed evidence showing his possession as mortgagee and by reason of his foreclosure proceedings, and showing the failure of plaintiff to either take possession of the mortgaged property or to file an extension of the mortgage, that the court did not err in admitting in evidence the bill of sale, nor in directing the jury to return a verdict for him.

[4, 5] Taking up, next, the assignment of errors made by Radetsky complaining of the judgment rendered against him, it appears that the court submitted to the jury a question of the liability of Radetsky to the plaintiff for the value of truck No. 15, because Swenson had testified that Radetsky had told him, when he took the notes from Swenson that he would collect the notes on the understanding that it was to be done for the benefit of Swenson, that he recognized the plaintiff's claim, and that the proceeds of the foreclosure sale of truck No. 15 would be used first to pay the claim of the plaintiff, and only the balance would be used to apply on Swenson's debt to Radetsky. The court told the jury that, if the foreclosure and sale was made pursuant to this agreement, as testified to by Swenson, then they should render a verdict for the value of the truck in favor of the plaintiff and against Radetsky, but that if the jury found that the agreement was as stated by Radetsky; that is, that he took the note from Swenson as a part payment to him on account, then they should return a verdict for Radetsky. The jury returned a verdict against Radetsky, and he prosecutes error. The assignments of error present no question that requires a review by this court. They embrace such allegations as error in receiving the verdict, that the judgment was against the law, and that there was error in overruling the motion for a new trial. There was no request by Radetsky for an instructed verdict. There was only a general exception to the instructions of the court in regard to truck No. 15, but these instructions covered many phases of the relations between Radetsky, the plaintiff, and Swenson. This court, however, has concluded that it should exercise its discretionary power to review the submission of the case to the jury, because the verdict and judgment seem to be founded on an obvious error, resulting in a judgment where there was no cause of action. A. Santaella & Co. v. Otto F. Lange Co., 155 F. 719, 724, 84 C. C. A. 145; Pierce v. United States, 255 U. S. 398, 406, 41 S. Ct. 365, 65 L. Ed. 697.

[6] The only issue made by the pleadings between the plaintiff and Radetsky was the claim made by the plaintiff of the right of possession of the two trucks by reason of the mortgage which Swenson had given to the plaintiff, and the claim that Radetsky unlawfully withheld possession of the trucks from the plaintiff, with a claim of damages for the detention. It is true that there is in the plaintiff's petition a prayer for a judgment against Radetsky, not only for the possession of these trucks and for damages for their detention, but also for the sum of $3,537.81, which happens to be the sum of the principal of the two notes which Swenson had given to the plaintiff. There is no allegation of any cause of action against Radetsky nor statement of any facts showing any

obligation or liability arising out of contract, tort, or otherwise, to support this prayer for judgment for the sum demanded. The answer of Radetsky was a general denial, and a plea of right of possession of the trucks in third parties. The replication was a general denial. When the court sustained the defense that the plaintiff was not entitled to the possession of truck No. 15, because it directed a verdict that Quiat, as intervener, was entitled to the possession of that truck, there should have also been a verdict directed in favor of Radetsky as to this truck. Moreover, the instructions to the jury in effect directed them to find a verdict against Radetsky, if he had agreed with Swenson that he would apply the proceeds of the foreclosure sale to the payment of the plaintiff's mortgage. There was no issue in the pleadings between the plaintiff and Radetsky which authorized such a verdict in a replevin action, which involved only the right of possession of specific property and the claim of damages for its detention, and for this reason the judgment against Radetsky must be reversed.

The intervener Barter has also prosecuted a writ of error because of the judgment against him and in favor of the plaintiff. The court directed the jury to return a verdict in favor of the plaintiff as to truck No. 65, and the intervener Barter excepted to the giving of that instruction, and he now assigns the giving of that instruction as error. As has been stated, Swenson on August 24, 1920, had executed a mortgage of this truck to the plaintiff to secure the payment of a promissory note, due in 90 days, representing the balance of the purchase price, and had also given Radetsky a mortgage on the same truck to secure a balance owing to him. Swenson retained possession of the truck, storing it in several warehouses and on September 30 had it moved to another storehouse belonging to a company of which Radetsky was the president and Swenson was the general manager. Swenson resigned as manager in February, 1921. The truck had remained in this storehouse, and remained there after Swenson's retirement as manager. He says that Radetsky then took possession as mortgagee. Radetsky claimed that he had the tractor removed to another place in Denver on May 3, 1921, and that he kept it there for two weeks. Radetsky, by his attorney, advertised a sale of the tractor under the chattel mortgage given him by Swenson, and on May 10th it was sold to intervener Barter for the stated price of $2,130, and Radetsky gave the purchaser a bill of sale purporting to convey the truck in pursuance of the sale. The sale occurred at the office of Radetsky's attorneys, not in view of the truck, and Barter did not pay Radetsky the purchase price. Radetsky explained this by saying that Barter could do work and pay for the truck by that means. The truck was kept at the storehouse again after the sale until just before this suit was begun.

[7] The theory upon which the court directed a verdict for the plaintiff was that the Swenson mortgage to Radetsky was so defectively acknowledged that it was ineffective under the Colorado statutes. There was ample evidence from which the jury might have found that Radetsky had taken possession of the truck under his mortgage and that Barter had purchased the truck at the sale and had thereafter retained possession of it until the plaintiff began this suit. Under the laws of Colorado, the taking of possession by a mortgagee dispenses with the necessity for a formal acknowledgment of the mortgage by the mortgagor, and such possession would give a superior right to Radetsky's mortgage over the mortgage of plaintiff, which had become due for more than thirty days and had not been extended as required by statute. Bogdon v. Fort, 75 Colo. 231, 225 P. 247; Lampman v. Lamping, 70 Colo. 167, 170, 199 P. 418; Morrison v. McCluer, 27 Colo. App. 264, 267, 148 P. 380; Morse v. Morrison, 16 Colo. App. 449, 452, 66 P. 169; 11 Cor. Jur. 480.

[8] There can be no doubt, under the evidence in this case, that Swenson did not have possession of this truck after February, 1921, and while the evidence might leave some question as to the bona fides of the sale to Barter, the plaintiff was not entitled to a directed verdict, even if Barter held the truck for the benefit of Radetsky, as Radetsky's mortgage lien was superior to that of plaintiff, if possession was taken by Radetsky. The plaintiff in replevin must recover on the strength of his own title, and upon proof of his right of possession, and proof of the right of possession in either Barter or Radetsky should have prevented a verdict in favor of the plaintiff. Buchanan v. Scandia Plow Co., 6 Colo. App. 34, 36, 39 P. 899; Kelly v. Lewis, 38 Colo. 18, 22, 88 P. 388; Cobbey on Replevin, §§ 783–786, 34 Cyc. 1476, 1479, 1491.

[9] It is suggested that the mortgage sale was void because the sale was not made at a place where the property sold could be seen, and because credit was extended to the purchaser by the mortgagee; but no local

statute or rule is cited in support of this conclusion. Whether this method of conducting the sale made the sale void or voidable, or merely gave an injured person a right to an accounting from the mortgagee for the damages suffered (see Schier v. Dankwardt, 88 Iowa, 750, 751, 56 N. W. 420; Langdon v. Wintersteen, 58 Neb. 278, 281, 78 N. W. 501; Jones on Ch. Mtges. 801, 811; 11 Cor. Jur. 710) cannot be determined in this case, because the record contains only a portion of the chattel mortgage given to Radetsky, and it is not shown that the mortgage did not contain an express provision for such a mode of sale.

For the reasons stated, the judgment against Radetsky is reversed, with directions to award a new trial; the judgment against the intervener Barter is also reversed, with directions to award a new trial; and the judgment in favor of Quiat is affirmed.

STONE, Circuit Judge. I am unable to agree with the majority of the court as to truck No. 65. The evidence as to truck No. 65 is convincing to my mind that Radetsky and Barter, his foreman, were acting in collusion to secure this truck or its value for the benefit of Radetsky to protect him for moneys he had advanced to Swenson and which were still owing. This was attempted to be accomplished through the medium of a straw sale to Barter under an alleged chattel mortgage made by Swenson to Radetsky. The physical possession of the truck at the time it was seized by the marshal in this action was with one Lehrer but that possession was for and on account of Radetsky. Radetsky, however, in his attempt to save himself, claimed that Barter, his foreman, was the owner of the truck, and formally and positively disclaimed any right thereto in his pleadings. The alleged mortgage under which the straw sale took place to Barter was not a mortgage because of defective acknowledgment so that no title could pass under a sale thereunder and no rights affecting this truck company could arise out of such defective mortgage. It also appears from the evidence that this truck was taken from the possession of Swenson without his knowledge or consent. From the above situation it would seem that there was no shadow of title or right of possession, either in Barter or Radetsky, and that the right of possession lay in Swenson with such right of possession in the truck company as would result from the possession of Swenson and from the chattel mortgage executed by Swenson to it. Because the truck company

had failed to take possession or to extend its mortgage, that mortgage became ineffective under the laws of Colorado. But this inefficiency applied only to third parties and did not affect the instrument so far as Swenson was concerned. As Swenson had the right to the actual possession of this truck as against Radetsky and Barter, I think the plaintiff can avail itself of that situation and enforce its mortgage and therefore, the court was right in adjudging possession to it of this truck and that the judgment as to Barter and Radetsky should be affirmed.