The opinion of the court was delivered by
Brewer, J.:
This case has been to this court once before, and the opinion then filed will be found in 22 Xas. 89. The judgment theretofore rendered was at that time reversed, and the case remanded for another trial.
This second trial was had before the district court, without a jury; special findings of fact and conclusions of law were made, and judgment was entered thereon against the plaintiffs in error for the sum of $4,180.53. Exceptions were duly taken, and the record is now before us for review.
*438 The controversy as it now stands is alone between the administrator- of the estate of O. P. Faulkner, deceased, on the one hand, and Denny & Redman, claiming under the bill of sale from said Faulkner, recited in the opinion filed in 22 Kas., supra, on the other. On: the first trial such bill of sale was adjudged invalid, and judgment rendered against Denny & Redman for the full value of the cattle taken by them under the writ of replevin. Such ruling was considered erroneous by this court, and the bill of sale, which had been found by the jury to have been intended as only a security, was held to be valid as such security. On the last trial the district court found, following the decision theretofore rendered by this court, that such bill of sale was valid between the parties, though intended only as security and in the nature of a chattel mortgage. Its finding in reference to the character of this instrument, and the agreement under which ■ ‘it was given, is as follows: •
“ Said instrument of writing was then and there delivered by the said O. P. Faulkner to the plaintiffs; but the same was intended by the parties at the time only as security for certain advances, which were to be made by the plaintiffs to the said O. P. Faulkner, to wit: Four acceptances of $2,000 each, making in all $8,000, which were to become due at the times they agreed upon, and said cattle were to be fed by the said O. P. Faulkner until fit for market, and were then to be forwarded by him, and consigned to the plaintiffs at Chicago, for sale on commission. The net proceeds of the sale to be applied, first, to reimburse the plaintiffs for their advances; and second, the remainder thereof to be paid to the said O. P. ’Faulkner.”
Subsequent findings show that the four drafts of $2,000 each were drawn, accepted and paid by Denny & Redman, in accordance with their agreement; that a certain portion of the cattle named in said bill of sale were shipped, in pursuance of said agreement, by Faulkner in his lifetime to Denny & Red-man, and by thém sold; that out of the proceeds they reimbursed themselves for two acceptances already paid by them, and the balance of the net profits they remitted to Faulkner; that subsequently, having accepted and paid the other two *439 drafts, and Faulkner having deceased without shipping the cattle, they commenced this action of replevin, took possession of the cattle, and shipped them to Chicago, and. sold them, receiving as net proceeds the sum of $4,646.18. The court further found that the market value of the cattle in Brown county, at the time they were taken under the writ of replevin, was $6,650, and that no proceedings for the advertisement and sale of the cattle were taken by Denny & Redman, under the chattle-mortgage law of this state. Upon these findings, the court charged Denny & Redman with the market value of the cattle in Brown county at the time they were taken, to wit, $6,650, and credited them with their advances, to wit, $4,000, and rendered judgment against them for the balance and interest. On the other hand, Denny & Redman insist that having been entitled under the bill of sale to the possession of the cattle, and having shipped them to Chicago and disposed of them in exact accordance with the terms of the agreement between Faulkner and themselves, and having in this respect acted in entire good faith and with reasonable care and diligence, they are responsible for only the net proceeds of the cattle as sold by them in the Chicago market, to wit, $4,646.18.
The only question which we shall consider in this case — indeed the only question, as we see, now presented by the record other than mere technical questions, and those not affecting the substantial rights of the parties — is the question above indicated, as to the true measure of Denny & Redman’s liability. Counsel for defendant in error insist that the district court followed the exact language and ruling of this court, as stated in the opinion heretofore filed. In a certain sense, this contention of counsel is correct; yet the language of that opinion was based upon a different state of facts, and used in disposing of a different question from that now presented. Indeed, the point now presented by counsel was not at all considered or passed upon by the court then. In that opinion, after referring to the fact that Denny & Redman did not proceed under the chattel-mortgage law, but shipped the property to Chicago and there disposed of.it, we used, it is true, this language:
*440 “In determining the remedies under a contract, the lex fori governs. Hence, if they had proceeded in good faith under the statute to advertise and sell the property, after taking it into their possession, their liability would not have exceeded the surplus of the proceeds of such sale above their debt, interest and costs. Having made other disposition, their liability must be the excess of the value of the cattle at the time- and place of seizure above such debt and interest.”
' gage; power to stipulate, *441 2. Sale; measure of mortgagee’s *440 But the fact that Denny & Redman, in thus shipping the cattle to Chicago and selling them, were proceeding simply in accordance with the express terms of the contract, was-not a fact to which our attention was at all directed, if indeed it appeared in the record. Now the fact -is expressly found by the court, and the question is distinctly presented by counsel to our attention, whether a chattel mortgagee, after-taking possession of the mortgaged property, must, in order to protect himself, proceed to advertise and sell the mortgaged property in accordance with §17 of the chattel-mortgage act,, or may proceed to make such other disposition of the property as has been agreed upon by the parties at the time of giving the security. In other words, is an agreement between mortgagor and mortgagee, for any reasonable disposition by the mortgagee of the mortgaged property in case of non-payment of the mortgage debt, other than that of public-advertisement and sale as named in the statute, a valid agreement? And if valid, and the mortgagee proceeds to act inexact accordance with its terms, and acts in good faith and with reasonable care and diligence, what liabilities does he-incur as the result of such action? We think such agreement must be held valid, and that the 0 # 7 mortgagee so acting is responsible only for the actual results of such action and proceeds of such disposition. The contract is valid; there is no statute forbidding it; it is not against public policy, and would oftentimes increase the value of the mortgaged property to the mortgagor as security, without in any manner prejudicing any substantial rights. Why should not the owner of personal property, who may sell absolutely or conditionally, and impose such conditions *441 as the parties may agree upon, or give it away, providing it be not done in fraud of creditors — why should not such owner be permitted to mortgage his property upon such conditions as he sees fit? Freedom in commercial transactions is always to be encouraged, providing only, that such freedom does not trespass upon any statute, do any wrong to the public, or work any injustice to the parties. It would often be of great value to the mortgagor if he could insert a valid stipulation that the mortgaged property, when taken possession of by the mortgagee, should be sold in a certain market, or at a certain time, or upon certain conditions. To deprive him of such right would render his property less valuable for the purpose of security, and perhaps prevent him from obtaining such a loan as his necessities require. If the. mortgagee carries out in good faith the terms of the agreement, and , , ... makes the very disposition which he has contracted to make, he has broken no contract, he has been guilty of no bad faith to the mortgagor, and ought to be chargeable with only the actual proceeds of the property thus disposed of by him.
The judgment of the district court must therefore be modified in accordance with these views; and the case will be remanded with instructions to enter a judgment against Denny & Redman for the difference between their advances and the net proceeds of the sale, to wit, $646.18, and interest at 7 percent, thereon from the 29th of June, 1872. In all other respects, and except as so modified, the judgment of the district court will be affirmed. The costs of this court will be divided between the parties.
All the Justices concurring.