## John H. Bearss v. David Preston.

*Chattel mortgage—Right of mortgagee to possession—Sufficiency of declaration for damages from unlawful retention— Non-payment of surplus on sale—Trover.*

1. A mortgage containing no express promise to pay interest, and specifying no time of payment, either at a future day or on demand, is due as soon as given, to secure so much of the indebtedness as was due at time of its execution. *Lyon v. Ballentine,* 63 Mich. 98 (head-note 5).

2. Where a chattel mortgage covered *all* of the existing and future-acquired stock in a lumber yard, and authorized the mortgagee to enter upon the premises where the goods might be, and take possession thereof, and sell and dispose of the same, he may, on default, enter and take possession of the yard and mortgaged property for the purposes of such sale; but he cannot exclude the mortgagor from the yard or office, and when the lumber is sold his right to possession is ended. In such a case the purchasers would have a right to enter and remove the lumber purchased, but this should be done as quickly as possible.

3. In such a case a declaration alleging that the mortgagee not only

took possession of the mortgaged property, but wrongfully, maliciously, and to greatly injure the mortgagor, took possession of the yard and stables, and the entire business and premises, contrary to the wish and will of the mortgagor, and excluded him *entirely* from occupying or using the same to carry on his lawful business, and interrupted and injured said business by putting boards across the entrance to said yard, and inscribing thereon the word "Closed," and, by reason of the premises, prevented and interrupted said mortgagor's business, and prevented him from occupying the yard and carrying on such business, and still continues to hold such possession,—is broad enough to warrant a recovery of damages arising out of the alleged unlawful holding and continued occupancy of the yard and retention of the unsold property.

4. A mortgagee is liable to the mortgagor in trover for the surplus arising on the sale of the chattel-mortgaged property on failure to pay over the same, such act amounting to a conversion of the goods sold in excess of the debt.

Error to superior court of Detroit. (Chipman, J.) Argued January 19 and 20, 1887. Decided May 5, 1887.

Case. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*Oscar M. Springer* (*Edwin F. Conely,* of counsel), for appellant.

*H. M. Campbell* (*Otto Kirchner,* of counsel), for defendant.

MORSE, J. The plaintiff brought suit in the superior court for the city of Detroit against the defendant, declaring in trespass on the case in four counts.

The plaintiff's claim in substance is that he was engaged in the lumber business in the city of Detroit, renting and occupying an office and lumber yard on Fort street west. The defendant was his banker, and had made advances to him, and held a large amount of his paper, and the paper of his customers indorsed by plaintiff.

October 16, 1884, the plaintiff, to secure defendant, gave

him a chattel mortgage on his stock of lumber in his yard, payable within ten days after demand. The mortgage also covered a team, wagons, buggy, and harness. It purported to secure the sum of $7,100,—

"Or whatever sum may then be due,   *   *   * within ten days after a demand for the same has been made, including notes, indorsements, checks, overdrafts, etc."

This indebtedness consisted of Bearss' personal notes, sold to Preston by Bearss and indorsed by him, and Bearss' accommodation indorsements for one Jenks.

August 11, 1885, the debt thus secured had been reduced to $6,024.18. On that day, at the solicitation of Preston, Bearss gave a second mortgage to secure this amount. This mortgage covered all of the lumber and timber in the yard,—

"Together with all laths, shingles, posts, or other stock and chattels that are now on said lots [lumber yard], or that may hereafter be added thereto, together with one two-horse team, four two-horse wagons, one single wagon, one buggy (phaeton), one double set of harness, and two single sets of harness."

There was no time of payment expressed in the mortgage; the condition being that Bearss should pay the said sum of $6,024.18,—

"Or whatever may be due to the party of the second part on notes, indorsements, checks, overdrafts, or other liabilities."

In default of such payment Preston was authorized to enter upon the premises of Bearss, or any place where the chattels were, and take possession of the same, and sell and dispose of the said goods at public vendue or private sale. He was also empowered to take possession and sell, in case Bearss should sell or assign or dispose of any of the goods without the written assent of Preston.

Bearss claims that he was induced to give this second mortgage, for the reason that Preston had demanded payment under the first mortgage, and said to him that if Bearss

would give a new mortgage, without any time in it, and take hold, and reduce the indebtedness promptly, he should not "suffer from the new mortgage." Preston also promised him further accommodation, and said he would not put the mortgage upon record, and would give him notice before foreclosure.

In violation of this agreement, Preston, in the absence of plaintiff, took possession of all the mortgaged property, and also of the lumber office and yard, and with no condition of the mortgage broken, and sold and converted the lumber to his use unlawfully. At the time Preston so took possession of the goods, there was due only $4,703.88. The sale of the lumber brought $5,490.59, while the minimum wholesale value of the same was $8,745.82, and the maximum value, at current retail rates, was $11,321.74. Preston claims there was $4,761.80 due. This left an excess from the sale of $728.79, against which he charged $613.25 for expenses. These expenses were attorney's fee, $100; insurance, $17.50; and rent, $250; and expenses of sale. The payment of rent is conceded to be all right. It is claimed that, notwithstanding this excess of the indebtedness realized from the sale of the lumber, Preston illegally held possession of the horses, wagons, harnesses, and buggy until October 31, 1885, and unlawfully kept Bearss out of the possession of the lumber yard until January 1, 1886; that by this action the business of the plaintiff was broken up and destroyed, to his great damage.

Bearss contends, *first*, that there was no default or condition broken, and therefore Preston acted tortiously in taking possession and selling the lumber under the new mortgage.

This is the first point to be considered.

The court below took the case from the jury, and directed a verdict for the defendant, holding that defendant had a right to enter and take possession under his mortgage, and sell the goods, and that plaintiff could not recover for the other

wrongs alleged, for reasons which will be considered hereafter.

The defendant denied that Bearss was induced to give the new mortgage as stated by him, or that he made the representations or promises claimed by Bearss.

The plaintiff requested the court to charge the jury, in substance, that the mortgage, under the circumstances, must be considered to have been given with reference to a default in the payment of that portion of the indebtedness not due at the time it was executed; and that, it being conceded that, between its execution and the taking possession by Preston, no part of such indebtedness became due, and that due having been reduced by a payment of $500, there was really, therefore, no default in the conditions of the mortgage, and the entry and sale by Preston was tortious and unwarranted, and the plaintiff was entitled to recover the market value of the property sold, less so much of the defendant's just claim as should be applied thereon.

The defendant contends that the mortgage was clearly, upon its face and by its terms, due immediately; no time of payment being stated therein, it was at law due at once, and could be foreclosed immediately. We think this contention is correct. The verbal promises and agreements claimed by plaintiff, if true, cannot be received to vary or contradict the contract as written in the mortgage. This instrument contained no express promise of interest, and specified no time of payment, either at a future day or on demand. It was therefore a mortgage due presently, or as soon as given, to secure so much of the indebtedness as was due at the time of its execution. *Eaton v. Truesdail,* 40 Mich. 1, 6; *Lyon v. Ballentine,* 63 Id. 102.

It also appears beyond dispute that, without the consent or knowledge of Preston, Bearss had assigned a portion of this stock to one Lamphere. As soon as Preston learned of

this, and not until then, he commenced the foreclosure of his mortgage, claiming the condition broken as to selling or assigning without his written assent.

We also think that, under the mortgage, Preston had a right to enter and take possession of the yard, and all the property in it, for the purposes of sale. The whole business was mortgaged, and the right of entry and sale was expressly given by the mortgage; and it was certainly for the interest of Bearss that the lumber should be sold where it stood upon the yard. To have removed the whole of it to some other place would have destroyed the business of plaintiff as effectually as to sell it in the yard, and the cost of such removal, chargeable to plaintiff, would have been an added detriment.

But it is further claimed that there was a surplus from the sale not accounted for; that the team, wagons, buggy, and harnesses were not sold, but yet unlawfully kept and used by defendant; that, as soon as the sale was over, Bearss was entitled to the yard, but it was unlawfully kept from him, for which wrongs he was entitled to damages in this action.

It appears that on the twenty-eighth day of August, 1885, Bearss mortgaged the same property, and all other property used in the lumber business, including the furniture in the office, to J. P. Scranton & Co., for the sum of about $1,500. Scranton & Co., by their attorneys, notified defendant, October 3, 1885, of their mortgage, and asked him to state if his mortgage was satisfied. Preston replied as follows:

"DETROIT, October 5, 1885.

"MESSRS. GRIFFIN & WARNER,

"Detroit, Mich.,—

"*Gentlemen:* Your favor of the third inst. is received. Our chattel mortgage vs. J. H. Bearss on his stock of lumber has been satisfied by sale of the property, provided the lumber holds out in measurement according to estimates at the sale, and provided the sale is sustained. We have no further claim vs. Bearss under the mortgage. Mr. Bearss has brought an action against me in the superior court, by which

I understand he will question the satisfaction of the mortgage with reference to notes not due at the time of the sale which were discounted for Mr. Bearss.

"Yours truly,
"DAVID PRESTON."

April 26, 1886, Scranton & Co. further notified Preston that they should claim the surplus in his hands arising from the sale under his mortgage, and demanded payment to them of the same. The plaintiff testified that he demanded the yard and team and wagons, which demand was refused. The defendant claims that the surplus belonged to Scranton & Co., and not to plaintiff, and that he did not retain possession of the yard and property not sold, after the sale; that J. P. Scranton & Co. bought a large part of the lumber sold, and took possession of the property a few days after the sale; and that the holding of the yard and horses and wagons was by them, and not by the defendant.

It is also argued, and was so held by Judge Chipman in the court below, that the damages arising out of this unlawful holding could not be recovered under any of the counts in plaintiff's declaration. We think this holding of Judge Chipman was erroneous. We are of the opinion that the plaintiff sufficiently alleged this injury in one of the counts of his declaration, wherein it is set forth, in substance, that the defendant not only took possession of said lumber and chattels, but wrongfully, maliciously, and to greatly injure the plaintiff, took possession of the yard and stables, and the entire business and premises, contrary to the wish and will of plaintiff, and still continues to hold the same; and that the defendant wrongfully took possession of the yard, stables, and other appurtenances thereto belonging, and excluded the plaintiff entirely from occupying or using the same to carry on his lawful business, and interrupted and injured his said business by putting boards across the entrance to said yard and inscribing thereon the word "Closed," and, by holding possession of the entire premises and business by force, hin-

·dered, prevented, and interrupted said plaintiff's business, and prevented the plaintiff from occupying said yard and carrying on his lawful business. The allegation is, in substance, that, by this oppressive and unlawful course of proceeding, the plaintiff was materially damaged. I think the allegation broad enough to cover the continued occupancy of the yard and the retention of the unsold property; and I am satisfied that the defendant had no legal right to board up the entrance to the yard and close it, or to take possession of the office to the exclusion of the plaintiff. He had a right to sell the lumber where it was, and to take sufficient possession of the yard for that purpose, but he had no right to exclude the plaintiff from the yard or office; and when the lumber was sold, that ended, at once and forever, the possession of the defendant for any purpose. The purchasers would have a right to enter and remove their lumber, but this should have been done as quickly as practicable.

The defendant, however, further claims that, in a day or two after the sale, he discharged the constable who held possession for him, and dismissed the other men employed in the yard. His counsel also insist that there is no evidence to show that he withheld possession from the plaintiff, or deprived him of any of his rights, unless the defendant can be charged with the possession of one Robinson. They also argue that Robinson was not authorized by Preston to retain either the yard, horses, or wagons, and Preston had no control over Robinson; and that the testimony shows that either Scranton or Robinson held possession of the yard, and used the horses and wagons.

The plaintiff's claim, that he was kept out of the use of the yard and team and wagons for the time specified by him, does not seem to be seriously disputed, and the question to be determined upon the trial was whether the defendant was responsible for the detention of the property.

The following agreement between J. P. Scranton & Co.

and the defendant must be considered in disposing of this question:

"This agreement, made and entered into this tenth day of September, A. D. 1885, between J. P. Scranton & Company, party of the first part, of Detroit, Michigan, and David Preston, of Detroit, Michigan, party of the second part, witnesseth:

"Whereas, the said party of the second part is the owner and holder of a certain chattel mortgage executed by John H. Bearss, of said city of Detroit, to David Preston, covering a certain stock of lumber and chattels upon Fort street west, in said city, and owned by said Bearss, upon which there is due and owing, at the date hereof, the sum of $5,461.90, and expenses of foreclosure and sale, 325 dollars, and which said mortgage was foreclosed, on the seventh day of September inst., by sale of said stock of lumber.

"And whereas, the said parties of the first part are also the owners and holders of a certain other chattel mortgage upon said property, executed by said Bearss.

"And whereas, said first parties have purchased, upon said foreclosure sale of the first described chattel mortgage, a certain portion of said stock and property for the sum of four thousand four hundred twenty-one and 71-100 dollars, more or less, as the lumber shall measure according to their bids.

"And whereas, first parties desire an opportunity to pay for the same by sale and disposition of said property, and to secure such payment to the satisfaction of said party of the second part.

"Now, therefore, in consideration of the premises, it is agreed that the said parties of the first part shall turn and deliver over the custody and control of said property to one George W. Robinson, as trustee, for security for the payment of the said purchase to said party of the second part. Said property shall be sold and disposed of by the said parties of the first part under the general direction of said Robinson. All sales of the same shall be made subject to his approval, and all collections arising upon sale of said lumber shall be made by or under the direction of said Robinson. The proceeds of the sale of said lumber, after deducting the necessary expenses attending the sales, shall be applied, as fast as received, upon the said indebtedness of said parties of the first part. After a sufficient amount shall be realized from such sales to pay the indebtedness to said second party in full, with inter-

est at eight per cent. thereon, and expenses of said trustee, then said second party shall release said property; and said Robinson, as trustee as aforesaid, shall relinquish possession of the property, and the right to full and undisturbed possession thereof shall revert to and become vested in said parties of the first part. Said second party hereby covenant to warrant and defend the title to said lumber purchased by said first parties.

"In witness whereof said parties have hereunto set their hands and seals this tenth day of September, A. D. 1885.

        "DAVID PRESTON.

        "J. P. SCRANTON & CO.

"I hereby accept the trust reposed in me by the foregoing agreement.

        "GEO. W. ROBINSON.

"September, 1885."

It appears, without contradiction, that Scranton neither took nor held possession of the yard or property under his mortgage, but such possession was entirely by virtue of his agreement with Preston. There was a conflict of testimony as to the exclusion of the plaintiff from the yard, and as to the question whether Scranton or Robinson was responsible for the holding of the yard, horses, and wagons. It seems clear to me that, under this agreement, Robinson was the agent of and acting for the defendant, Preston; and, if the holding of the yard and the use of the property were done by Robinson's orders, Preston would be liable therefor; but, if the same were held and used by Scranton on his own motion, then Scranton alone is responsible for the damages.

The plaintiff had the right to go to the jury—

1. Upon the oppressive conduct of the defendant in closing the yard, and excluding him from it and the office.

2. Upon the question whether Robinson or Scranton was responsible for excluding him from the yard if he was excluded after the sale.

3. As to who was responsible for holding the yard, and using the team and wagons, after the sale.

If Robinson was responsible under the second and third propositions, then the defendant is liable in this action for

the legitimate damages arising from such holding and use of the property. If Scranton alone was responsible, the defendant is not liable. The evidence shows that, as far as the sale was concerned, it was a fair one, and nothing was recoverable for any wrong in that regard, save the closing of the yard and excluding of the plaintiff, if that were done.

I think, also, that the plaintiff was entitled to recover the surplus in the hands of Preston under the count in trover, if Scranton did not claim it under his mortgage, and it would seem that he did not finally press any such claim. The goods so sold in excess of Preston's debt, if the proceeds were not paid over to Bearss, must be considered as having been converted by Preston to his own use.

For the reasons here given, I think the judgment of the court below must be reversed, and a new trial granted. Costs in this Court will be awarded to plaintiff.

SHERWOOD and CHAMPLIN, JJ., concurred.

CAMPBELL, C. J. (*dissenting*). I think the court below was correct in the rulings complained of. The declaration itself represents Scranton & Co. as entitled to act in receiving the property. Their mortgage covered, not only the lumber, but the whole outfit of teams and other articles, and all the furniture of the office. Bearss retained nothing that he could use or remove. I think the continuance of possession cannot be treated as Preston's possession.