No. 24,704.

T. H. Graves, *Appellee;* v. Elmer J. Negy et al. (George W. Molitor, *Appellant.*)

SYLLABUS BY THE COURT.

1. Sale of Automobile—*Chattel Mortgage Given—Recital in Chattel Mortgage Void as Against Public Policy.* A recital in a chattel mortgage given by the purchaser of an automobile that he waived "any right of action whatsoever against the seller, . . . growing out of the repossession or retention of said motor vehicle," when subjected to an interpretation that the seller could repossess himself of the automobile after it was more than half paid for and could dispose of it without giving an accounting thereof to the mortgagor, is against public policy and void.

2. Same—*No Election of Remedies Required.* No error occurred when the trial court refused to require the plaintiff to elect whether he was seeking damages for conversion of his automobile or merely to have it subjected to a lawful foreclosure.

3. Same—*Plaintiff's Evidence Good Against Demurrer.* The evidence examined and held sufficient to support plaintiff's cause of action against defendant's demurrer thereto.

4. Same—*Evidence of Facts Concerning Sale of Mortgaged Property Competent.* No error arose in showing that defendants, after making some repairs on the car, sold it to another purchaser at its original sale price. Such evidence tended to show its value and throw some light on the question of defendants' good faith in the exercise of their rights as mortgagees.

5. Same—*Amount of Veridict Not Prejudicial.* Although the·evidence would have justified a larger verdict for plaintiff than that rendered in his behalf yet it will not necessarily be disturbed on appeal at the instance of defendants when no miscarriage of justice is discerned therein so far as defendants are concerned.

6. Same—*Sale of Chattel Mortgaged Property by Mortgagee to Himself.* A sale of property under a chattel mortgage by the mortgagee to himself, or to a corporation of his creation, or to one in which he has a director's voice and vote, will only be permitted to stand, if timely challenged, when the circumstances clearly show fair dealing and good faith on the part of the mortgagee.

Appeal from Reno district court, William G. Fairchild, judge. Opinion filed October 6, 1923. Affirmed.

*W. A. Huxman,* and *Aaron Coleman,* both of Hutchinson, for the appellant.

*A. C. Malloy, R. C. Davis,* and *Warren H. White,* all of Hutchinson, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action to recover the value of plaintiff's interest in a Haynes automobile.

Plaintiff purchased the car from the defendants, Negy and Molitor, in September, 1920. The price was $3,250. In payment plaintiff gave defendants another car and also gave them a note for $1,640 secured by a chattel mortgage on the Haynes car. He made two payments of $205.10 each on the note, and thereafter apparently got into difficulties of some sort and left town, Hutchinson, but shortly afterwards returned. During his absence, defendants took possession of the car under this mortgage, and about that time they organized a corporation, The Southwest Motor Car Company, of which they were the controlling stockholders; and after a colorable but abortive sale of the car to one Sutton, the defendants transferred plaintiff's car to the corporation of their creation at a valuation of $2,000. Either defendants or their corporation made some repairs on the car, and it was sold to one Childs at its original sale price of $3,250.

On plaintiff's return to Hutchinson he demanded his car and offered to pay his note and mortgage thereon. This was declined. It is not clear whether the sale to Childs had been effected at that time or not. Then plaintiff demanded a settlement, which was refused. Hence this action. Plaintiff pleaded the material facts, and alleged that these sales were made for the purpose of defrauding and depriving him of his interest in the automobile.

As a defense to plaintiff's action, defendants set up their chattel mortgage on the car, the default of plaintiff on his note, and their right under the mortgage to take possession of the car and to sell it at private sale; and that pursuant thereto they had sold it to the Southwest Motor Car Company in good faith.

On this joinder of issues, the cause was tried before a jury which returned a verdict ·for plaintiff in the sum of $1,000. Judgment being entered thereon and defendants' motion for a new trial overruled, they appeal.

It is first urged that defendants were entitled to judgment on the pleadings, because of the recitals in the chattel mortgage admittedly signed by plaintiff, the chief clause of which reads:

"Purchaser does hereby waive any right of action whatsoever against the seller, his agent or representative growing out of the repossession or reten-

Graves v. Negy.

tion of said motor vehicle . . . purchaser does specifically waive the benefit of any or all laws or statutes governing the resale of said vehicle repossessed by seller if purchaser is permitted so to do by law, . . . or if any execution, judgment, sequestration or any writ should be levied on any property of purchaser."

Of course a vendor of a chattel may ordinarily sell it upon such terms as he sees fit *(Denny v. Van Dusen,* 27 Kan. 437), but there are certain qualifications upon that doctrine. He cannot bind his vendee by exacting a writing from him to submit it to an outright waiver of any right of action regardless of some fraudulent conduct on the part of the vending mortgagee. He cannot oust the jurisdiction of the courts by a stipulation in writing. (6 R. C. L. 752.) A waiver of plaintiff's right to have his mortgaged property fairly sold and dealt with in good faith and which by implication, or at least by defendants' construction, gave the defendants the power to forfeit and sacrifice plaintiff's interest in the car altogether and tell him "to go to hell" in response to his reasonable demand for an accounting and settlement, is one which no court of justice should countenance. (11 C. J. 743; 5 R. C. L. 472.)

It is next argued that the plaintiff should have been required to elect whether he was seeking damages for the conversion of the car or merely to have it subjected to a lawful foreclosure. The petition set up the facts. It recited but one cause of action which, when and if established, would clearly justify damages, although possibly a lawful foreclosure of defendants' chattel mortgage on the car might also have been decreed, yet that was a matter which plaintiff did not need to demand or even suggest. Such suggestion might properly have been made by defendants, or prayed for in their pleadings.

No error occurred in overruling defendants' demurrer to the evidence. Defendants' bad faith was established *prima facie* when plaintiff rested. He had shown that his practically new car, on which he had paid in cash and other property over $2,000 and on which he only owed about $1,200 or $1,300, had been arbitrarily forfeited, and which after some expense for repairs had been resold by defendants or by their corporation to Childs at the price of a new car, $3,250. It was shown that when plaintiff demanded an accounting defendants gave him no satisfaction. Plaintiff testified:

"I demanded a settlement from Negy in connection with the taking of this car, in January, along during the latter part of the month. I told him I wanted a settlement in money or its equivalent. He told me to 'go to hell.'"

In *Wygal v. Bigelow,* 42 Kan. 477, 484, 22 Pac. 612, it was said:

"The unfair or fraudulent sale of mortgaged property by a mortgagee should not and will not defeat or extinguish the rights of a mortgagor. The mortgagee has no right by any unfairness to sacrifice the property and deprive the mortgagor of the surplus over the debt which by a fair and honestly conducted sale might arise. . . . We cannot say as a matter of law upon the allegations in the answers, that the property was wrongfully and unfairly disposed of; nor can we say that the property was sold fairly and in good faith according to the terms of the mortgage. These are matters for a jury under a proper instruction from the trial court."

Defendants also urge that the conversion occurred, if at all, when Negy took possession of the car. We do not see that. Negy and his codefendants had a perfect right to take possession of the car when and if plaintiff defaulted on his note, or upon the happening of any of the reasonable conditions recited in the mortgage. Just when defendants decided to strip the plaintiff of his substantial interest in the car was not shown. That actionable fact was proved by the result, when defendants were done with their maneuvers in disposing of it and pocketing all the proceeds without an accounting.

Error is assigned in admitting in evidence the fact that defendants disposed of the car to Childs at its original sale price. This evidence was competent both as to its value and on the question of defendants' good faith.

It is next contended that the verdict was contrary to the evidence, and that the particular amount of the verdict was not supported by any evidence. It would be mere repetition of what we have already said to show that the general verdict was well supported by evidence; but it is true that we can glean no figures in the testimony from which the precise sum, $1,000, can be deduced. Under the evidence a verdict in plaintiff's favor for a considerably larger sum—the difference between the value of the car and the amount he still owed on it—could easily have been found and apparently ought to have been, but there were a number of loosely proved matters involved—the actual cost of the repairs to refit the car for sale as a new one, and what part of these were paid by plaintiff and what part by defendants. Defendant Negy testified that he did not even know how many payments of $205.10 or other amounts plaintiff had made on his note. Since plaintiff makes no complaint of the verdict and it was for a sum well within the evidence, no prejudice to defendants is discernible and the amount will have to stand.

In conclusion it is urged that "if there was fraud in the sale of this car, then we say it is impossible and unsafe for any mortgagee ever to sell at private sale any mortgaged property." Except under circumstances which will stand the scrutiny of honest and disinterested men, a sale of mortgaged property by a mortgagee to himself or to a corporation of his creation or in which he has a director's voice and vote, is always unsafe and ought to be impossible, but such doctrine states no new principle of law, of equity, or of good conscience.

. Judgment affirmed.