No. 27,111.

M. Reeser, by Sophia L. Frink, Executrix of the Estate of Martin Reeser, Deceased, *Appellee*, v. J. M. Hammond, *Appellant*.

SYLLABUS BY THE COURT.

1. Fraud—*False Representations—Evidence—Verdict in Other Like Actions.*
In an action for damages for fraud in inducing the purchase of an oil and gas lease by false representations the plaintiff produced a witness who testified that a sale to him of like property had been effected by similar false representations of the defendant. It is held that no error was committed in refusing to allow the defendant to prove that a verdict and judgment had been rendered against the witness in a like action brought by him against the defendant.

2. Evidence—*Admissibility—Market Price of Property.* In an action for damages for fraud in the sale of an oil and gas lease in August, it is held that error was not committed in allowing the admission of evidence of what such leases were selling for and what this lease sold for in the preceding January, as having some bearing upon its value at the time of the sale in question.

3. Witnesses—*Cross-examination—Showing Relations With Defendant.* In the action above referred to it is held that no error was committed in permitting the plaintiff to show upon cross-examination that a witness for the defendant bought the note given by another purchaser under similar circumstances at a discount of 15 per cent.

4. Trial—*Instructions—Evidence Justifying.* In the action above referred to an instruction that fraud could be proved by circumstantial evidence is held not to have been erroneous, although most of the evidence was direct.

5. Fraud—*False Representations—Evidence of Damage.* In an action for damages for false representations in the sale of an oil and gas lease the

Evidence, 22 C. J. p. 182 n. 1; 10 R. C. L. 1118. Fraud, 27 C. J. pp. 61 n. 72, 108 n. 74; 12 R. C. L. 434. Limitations of Actions, 37 C. J. p. 1251 n. 91; 17 R. C. L. 1005. Trial, 38 Cyc. p. 1622 n. 46; Witnesses, 40 Cyc. p. 2656 n. 11.

amount paid is some evidence of what the property would have been worth if the representations had been true. (Following *Cramer v. Overfield*, 115 Kan. 580, 223 Pac. 1100.)

6. LIMITATIONS OF ACTIONS—*Fraud—Computation of Period—Evidence*. The evidence is held to support a finding that the fraud relied upon was not discovered by the person defrauded until less than two years before the action was brought.

Appeal from Stafford district court; RAY H. BEALS, judge. Opinion filed February 12, 1927. Affirmed.

*Robert Garvin, Evart Garvin,* both of St. John, and *F. L. Martin,* of Hutchinson, for the appellant.

*J. R. Beeching, William H. Burnett* and *Charles Hall,* all of Hutchinson, for the appellee.

The opinion of the court was delivered by

MASON, J.: M. Reeser began this action against J. M. Hammond to recover damages for fraud in making false representations by which he was induced to buy twenty acres of an oil and gas lease in Dickinson county from a man named Laughters for $2,000. Reeser having died, his executrix was substituted as plaintiff. Judgment was rendered against the defendant and he appeals.

1. One John Breitenbach testified that a little after the buying of the lease by Reeser the witness had bought a like acreage a few miles away for the same amount from Laughters upon the strength of false representations made by the defendant almost identical with those made to Reeser, and under similar circumstances, the two having called upon him. This testimony was introduced on the principle which in a criminal case permits the prosecution to show the commission by the defendant of other crimes involving the same system or plan as the one he is charged with. The defendant offered to prove that Breitenbach had likewise sued Hammond for damages on this account and a trial had resulted in a verdict and judgment for the defendant. Complaint is made of the sustaining of an objection to this evidence. We think the ruling was proper. So many elements may have entered into the reasons for the verdict against Breitenbach aside from the question whether he had told the truth that the fact of its rendition cannot be regarded as having a tendency to impeach his veracity or disprove his testimony.

2. Reeser bought his lease in August, 1920. Two sons of the landowner, who in January of the same year had executed the lease out of which the acreage sold to Reeser was carved, testified that at

Reeser v. Hammond.

that time the price being paid for oil and gas leases upon land in that vicinity was from $1 to $10 an acre, and that their father was paid $600 for this lease, which covered 159 acres.   Objection is made to the admission of this testimony because it did not relate to the time of the sale to Reeser and because the sum paid by the original lessee had no tendency to show what its value was.

There was, it is true, a very considerable interval between the time the lease was made and the time of the sale of a part of it to Reeser, and great changes of market value may have taken place in the meanwhile.   But we do not think the evidence was rendered inadmissible on this account.   Its probative force with respect to values in August may not have been strong.   But there is no presumption that the value increased later, and if it did increase opportunity was open to the defendant to show it.

The price paid for the lease originally was competent evidence of its value at that time.   (*Graves v. Negy,* 114 Kan. 373, 219 Pac. 286; 2 Jones Commentaries on Evidence, § 699, p. 1310, § 704, p. 1320.)

3.   A witness for the defendant, who had testified to his good reputation and to matters tending to contradict the allegations of fraud, said on cross-examination he had purchased the note given to Breitenbach for the lease sold to him.   He was asked how much he discounted it.   An objection was made to the question, on the ground that it was not proper cross-examination, and was incompetent, irrelevant and immaterial.   The objection was overruled, the court saying, however, that it was not cross-examination and the plaintiff would be bound by the answer.   The witness answered that the discount was 15 per cent.   The admission of the answer is complained of.   We think it was admissible as cross-examination, having some tendency to show the witness' relations with the defendant and Laughters as bearing upon a possible bias in their favor.   That the ruling was placed upon another ground is not important.   Moreover the amount of the discount may have had a bearing upon the question of fraud.

4.   The charge of the court included the following instruction, which the defendant objects to on the ground that there was no evidence on which an instruction concerning circumstantial evidence could be based, and its effect was therefore misleading:

"You are further instructed that while fraud is not presumed, but must be established by a preponderance of the evidence, yet fraud, like any other fact,

may be proved by proving circumstances from which the inference of fraud is natural and irresistible; and, if such circumstances are proven, and they are of such a character as to produce in the minds of the jury a conviction of the fact of fraud, then it must be considered that fraud is proven."

The case rested chiefly on direct evidence, but we do not think the absence of circumstantial evidence was so complete as to render this instruction prejudicially erroneous. The making of representations was shown by direct evidence of a grandson of Reeser, who heard the conversation leading up to the sale. Their falsity was testified to by Breitenbach as the result of his observations on a visit to Dickinson county. But the effect of the testimony of Breitenbach concerning his experience with the defendant and Laughters depended upon the drawing of inferences. This is true also of such selling talk as "We have just got a few leases"; "We are selling them to our personal friends and nobody else"; "Before the note comes due your profits off of this well [one then being drilled] will more than pay for the note—pay your note off"; "There is so much oil on the water wells and in the streams and in the wells that it is not fit for domestic use." "He said they had men out there with a doodle bug and he said this instrument never failed to show where the oil was."

5. An instruction was given to the effect that the measure of damages in case the plaintiff recovered was the difference between the actual value of the lease and what it would have been worth if the representations had been true. The defendant accepts this rule and maintains that the plaintiff's case failed because there was no evidence of what the lease would have been worth if it had been as represented. The rule as stated "is for the benefit of the injured party and the wrongdoer cannot complain because of his being satisfied with the mere return of his money, which is one of the remedies open to him. . . . Moreover the price paid for an article is some evidence of its value for the purpose of assessing damages." (*Trapp v. Refining Co.,* 114 Kan. 618, 619, 220 Pac. 249.) "The fact of a certain sum having been paid for property the sale of which is brought about by false representations is at least some evidence that it would have been worth that amount if the representations had been true. . . . This departure from the usual method of proving value is not one of which a person found to have effected a sale of the property by false representations concerning it can with good grace complain in an action for the redress of the fraud." (*Cramer v. Overfield,* 115 Kan. 580, 582, 223 Pac. 1100.)

6. The sale of the stock having been made in August, 1920, the action, which was begun in January, 1923, was barred by the two-year statute of limitations unless Reeser first learned of the fraud, as alleged in the petition, in March, 1922. The defendant claims that there was no evidence to that effect. We think otherwise. Breitenbach, who like Reeser lived in Stafford county, testified that about the first of March, 1922, he went to Dickinson county to see about the oil wells; that he went for himself, but had talked with Reeser about it, too, having discussed with him the representations made concerning the lease sold to him; that he ascertained there were no producing oil wells in Dickinson county, no oil on running water and no oil in the wells; that he went to the location of the Reeser lease; and that upon his return he told Reeser what he had discovered. We think this evidence justified an inference that Reeser did not discover the fraud until March, 1922.

The judgment is affirmed.