No. 40,851

Frank Watkins and Thelma Watkins, *Appellants,* v. Earl Layton, Audrey Layton, and Johnnie Masterson, d/b/a Bud's Lounge, *Appellees.*

(324 P. 2d 130)

Opinion filed April 12, 1958.

*Julian E. Ralston* and *John E. Hurley,* of Wichita, were on the briefs for appellants.

*A. W. Hershberger, J. B. Patterson, Richard Jones, Wm. P. Thompson, H. E. Jones, Jerome E. Jones* and *William E. Palmer,* all of Wichita, were on the briefs for appellees.

The opinion of the court was delivered by

SCHROEDER, J.: This is a replevin action purportedly commenced when the appellants filed a replevin affidavit following which the personal property under chattel mortgage was seized and sold. The appellees, by cross petition, claimed actual damages and punitive damages for conversion of the property. Judgment for appellees in the lower court, in addition to actual damages, included $300.00 as punitive damages.

The only question presented is whether the trial court erred in allowing punitive damages.

The appellants were the owners of a purchase money chattel mortgage in the amount of $2,500.00. They had originally sold the property, consisting of tavern fixtures and equipment, to the appellees for a total price of $5,500.00. The appellees paid $3,000.00 in cash and had made payments of $1,200.00 on the note leaving a balance of only $1,300.00.

On June 7, 1956, appellees being in default on the monthly installment payments, the appellants filed an affidavit in replevin in the Office of the Clerk of the District Court of Sedgwick County. No petition was filed but the Sheriff, acting under the order of the Clerk of the District Court, took possession of the property and delivered it to the appellants on June 8, 1956. The appellants promptly sold the property sometime between June 8 and June 10, 1956. It was sold for $2,000.00 which was $700.00 in excess of appellees' indebtedness. No notice, statutory or otherwise, was given to appellees of the repossession or of the sale of this property, and at no time was payment or tender of payment of the excess, in the sum of $700.00, ever made to the appellees by the appellants.

The first attempt to obtain service on appellees was made on July 12, 1956, by publication. On motion of the appellees this service was quashed by the court on September 4, 1956, for the reason that no petition was filed at the time of its issuance. The petition was filed on July 23, 1956, and the first attempt to secure service on appellees after the filing of the petition was made on September 15, 1956. The appellees filed a cross petition praying for the difference between $5,500.00, the price they had agreed to pay appellants for the property, and $1,300.00, the amount they owed when the property was seized and sold. The appellees also prayed for $5,000.00 as punitive damages.

After hearing, the trial court entered judgment for the appellees in the sum of $700.00, actual damages; and also gave the appellees judgment for $300.00 as punitive damages. The appellants admit their liability for the sum of $700.00, actual damages, but appeal as to the punitive damages.

Attached to the petition of the appellants was a copy of the chattel mortgage which was executed by the appellees. The only paragraph material to this appeal reads:

"Provided, that if the undersigned shall pay the said debt, then this mortgage shall be void. And it is hereby agreed that *if default be made in the payment of said debt*, or any part thereof, or if any attempt be made to dispose of or remove said property from Sedgwick County, Kansas, or if at any time the payees of said note shall deem the debt unsafe or insecure, *they are hereby authorized to enter upon the premises where said property may be, and remove or sell the same, at public or private sale, with or without notice*, and out of the proceeds retain the amount owing on said debt, with expenses, attending the same, *rendering to the undersigned the surplus after the whole of said debt shall have been paid* with charges of aforesaid." (Emphasis added.)

The appellants assert that even though the writ upon which the Sheriff acted in seizing the property turned out to be void, by reason of their failure to file a petition when the replevin affidavit was filed on June 7, 1956, the appellees must show they are the owners of the property and entitled to possession, and that the replevin action was fraudulent, malicious and brought with collusion and gross negligence. The appellants argue that pursuant to the provisions of the chattel mortgage they had the right to take possession without filing a legal action, but in the interest of peaceful relations they pursued the legal route to do what they had a right to do under the terms of the contract without any legal assistance.

Appellants argue that where they had a right to repossess property, peacefully, without any process whatever, the Sheriff, acting under a void writ of seizure on the buyers' default, acts as the sellers' agent and the property may be deemed peaceably retaken. (Citing: *Grossman v. Weiss*, 221 N. Y. S. 266, 129 Misc. Rep. 234; *Mendelson v. Irving*, 155 App. Div. 114, 139 N. Y. S. 1065; and *Ellis v. Smithers*, 206 Ark. 247, 174 S. W. 2d 568.)

In *Duff v. Read*, 74 Kan. 730, 88 Pac. 263, this court held that an officer who levied execution on a void judgment became the agent of the party causing the execution to be issued.

The appellees, however, concede that the appellants had the right of possession under both the mortgage and the law. The appellees assert the basis of their action is not how the appellants gained pos-

session of the property, but what they did with it after they gained possession. First, appellees contend that appellants did not give notice pursuant to the provisions of G. S. 1949, 58-309. Second, they contend that the appellants did not comply with the provisions of G. S. 1949, 58-311, which provide:

"If, after satisfying the mortgage and costs of sale, there be any surplus remaining, the same shall be paid to any subsequent mortgagee entitled thereto, or to the mortgagor or his assigns."

Under appellees' first contention it must be conceded that notice to the appellees prior to sale of the mortgaged property was unnecessary by the terms of the chattel mortgage, and the appellants had the right thereunder to convey the entire interest of the appellees in the mortgaged property. (*Harris v. Lynn*, 25 Kan. 281.) Further, the parties had a right to agree upon the method for disposal of the mortgaged property notwithstanding the provisions of the statute requiring public notice of sale in case of nonpayment of the mortgage debt. (*Denny v. Van Dusen, Adm'r.*, 27 Kan. 437; and *Reynolds v. Thomas*, 28 Kan. 810.) We therefore think appellees' first contention is without merit, and in view of the disposition made under appellees' second contention think it unnecessary to pursue this point further. (See, *Graves v. Negy*, 114 Kan. 373, 219 Pac. 286.)

The title and rights of parties to personal property covered by a chattel mortgage relative to the provisions of Article 3, Chapter 58, G. S. 1949, identical to the provisions of G. S. 1901, are discussed and clarified in *Foy v. Comanche County*, 69 Kan. 206, 76 Pac. 859, and reference is made thereto.

The earliest Kansas cases indicate that damages, sometimes called exemplary, vindictive or punitive, are permitted whenever the elements of fraud, malice, gross negligence, or oppression mingle in the controversy. (*Malone v. Murphy*, 2 Kan. 250; *Albert Wiley v. Keokuk*, 6 Kan. 94; and *Cady v. Case*, 45 Kan. 733, 26 Pac. 448.) Such damages are allowed not because of any special merit in the injured party's case, but are imposed by way of punishing the wrongdoer for malicious, vindictive or a willful and wanton invasion of the injured party's rights, the purpose being to restrain and deter others from the commission of like wrongs. (*Stalker v. Drake*, 91 Kan. 142, 136 Pac. 912; see, also, *Townsend v. Seefeld*, 102 Kan. 302, 169 Pac. 1157; and 15 Am. Jur., Damages, § 266, p. 700.) The rea-

sons for the rule are fully discussed in *Albert Wiley v. Keokuk,* supra.

More recent decisions have followed the early lead in permitting exemplary damages. (*Roseberry v. Scott,* 120 Kan. 576, 244 Pac. 1063; *Motor Equipment Co. v. McLaughlin,* 156 Kan. 258, 133 P. 2d 149; and *Wendtlandt v. National Cooperative Refinery Ass'n,* 168 Kan. 619, 215 P. 2d 209.)

Before exemplary or punitive damages may be awarded there must be actual damages and a right of recovery therefor established. (*Stoner v. Wilson,* 140 Kan. 383, 36 P. 2d 999; and *Schumock v. Meerian,* 175 Kan. 8, 259 P. 2d 173.) In the instant case this requirement is met since the appellants admit their liability for actual damages in the amount of $700.00 for which the lower court gave judgment. The question here remains whether the trial court erred in allowing punitive damages in the sum of $300.00.

Under both the statute, 58-311, *supra,* and the provisions of the chattel mortgage, the appellants were obligated to pay the surplus remaining after expenses to the appellees. The appellees contend that the conduct on the part of the appellants constituted a willful conversion of the appellees' property.

In the case of *Boam v. Cohen,* 94 Kan. 42, 145 Pac. 559, where a purported bill of sale was held to be a chattel mortgage, and where the mortgagee denied any liability to account to the mortgagor for the proceeds of the property, the court said:

". . . Conduct inconsistent with or in denial of the plaintiff's rights not only amounted to a breach of contract, but also amounted to a breach of faith in accepting and dealing with the security. This being true, the plaintiffs were at liberty to treat the property as converted, . . ." (p. 46.)

This court in *Bank v. Wherry,* 102 Kan. 224, 169 Pac. 1146, held that a bank was not authorized to make a conditional sale of mortgaged chattels which it had the right to sell outright, even at a sacrifice price if it did so in good faith. By making the conditional sale the bank was guilty of converting the property, and the legal consequence of that conversion was to charge the bank with its fair and reasonable value. In that case no issue was presented concerning exemplary or punitive damages.

Where a mortgagee disposes of personal property in denial of the title or interest of the mortgagor he is liable for conversion, or if he fails to account for surplus money arising in the sale he is liable for conversion. (14 C. J. S., Chattel Mortgages, § 215a, p.

817; *Unfried v. Libert,* 20 Idaho 708, 119 Pac. 885; *Anderson v. Joseph,* 95 Ark. 573, 130 S. W. 165; and *Bearss v. Preston,* 66 Mich. 11, 32 N. W. 912.)

Are exemplary or punitive damages allowable where the mortgagee converts personal property upon which he has a chattel mortgage?

At law a conversion, in the sense here used, is an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of the owner's rights. The intention required is simply an intent to use or dispose of the goods, and the knowledge or ignorance of the actor as to their ownership has no influence in deciding the question of conversion. Where the original taking of property is a conversion and is coupled with *animus furandi* (the intention to steal), it constitutes the crime of larceny. When the taking of property is lawful in the first instance, and it is afterwards converted *animo furandi* to the taker's use, it is not larceny but embezzlement.

The fact that the act on which an action is based is unlawful and subjects a person to criminal prosecution does not of itself authorize the recovery of exemplary damages, but generally the intentional doing of a wrongful act with full knowledge of its character and without cause or excuse, is malicious and warrants an award of exemplary damages. (*Donley v. Amerada Petroleum Corp.,* 152 Kan. 518, 106 P. 2d 652; *Rusch v. Phillips Petroleum Co.,* 163 Kan. 11, 180 P. 2d 270; and *Hammargren v. Montgomery Ward & Co.,* 172 Kan. 484, 241 P. 2d 1192.)

In *Glass v. Brunt,* 157 Kan. 27, 138 P. 2d 453, it was held that a defendant who received stolen property from a thief, knowing it to be stolen, was properly subjected to punitive damages in an action for conversion. It may be said that malice upon which to sustain exemplary damages can be implied from such conduct.

The minimal mental attitude or state of mind on the part of a wrongdoer against whom exemplary or punitive damages have been recognized by this court in a tort action is found in *Railroad Co. v. Little,* 66 Kan. 378, 71 Pac. 820. There a passenger was compelled to leave a train before arriving at his destination because under company rules the train did not stop at his destination, after being informed by the company's agent in charge that the train

would stop at the place of the passenger's destination. The court there said:

". . . Besides this, the jury specifically found that the acts of the agents of the company were such as would make it 'guilty of gross negligence toward the plaintiff.' The case was, therefore, under the findings and authorities, one for vindictive damages." (p. 385.)

The Supreme Court of South Carolina, used elucidating language in *Parker v. General Motors Accept. Corp.*, 204 S. C. 547, 30 S. E. 2d 589, where it said:

"We think there is evidence, if believed by the jury, to warrant the inference of more than simple negligence or a technical conversion and to show a reckless disregard of the rights of respondent. . . . Respondent and his counsel were not notified of the proposed sale, and neither knew of it until after it had taken place. We see no error in refusing the motion for directed verdict as to punitive damages . . ." (pp. 557, 558.)

We think it clear that the law does not require a specific finding of an intentional and ruthless desire to injure in order to sustain an award of punitive damages. The burden of proof is sustained, once the injured party shows such gross neglect of duty as to evince a reckless indifference of the rights of others on the part of the wrongdoer. In *Birmingham Waterworks Co. v. Davis*, 16 Ala. App. 333, 77 So. 927, the Alabama court held that the burden of proof is sustained, once the injured party shows an entire want of care so as to raise the presumption that the person at fault is conscious of the probable consequences of his carelessness.

In *Motor Equipment Co. v. McLaughlin*, supra, this court held proper the award of punitive damages where the mortgagee exceeded his authority and converted an automobile under a chattel mortgage. (See, also, *Sansone v. Studebaker Corporation*, 106 Kan. 279, 187 Pac. 673.)

Appellants concede that the cross petition of appellees was sufficient to allege a cause of action for punitive damages in addition to actual damages, but contend that no evidence was presented to sustain the allegations. Appellants, however, by their abstract have not seen fit to set forth the pleadings, any of the evidence, the findings of the trial court, or the motion for a new trial. The journal entry does not disclose the findings of the trial court, it merely indicates the judgment. On this state of the record the only specification of error subject to review is:

"That the trial Court erred in rendering judgment for defendants for $300.00 punitive damages."

The factual situation insofar as it has heretofore been stated is set forth in the abstract with portions taken from the counter abstract and is not disputed by the parties. The appellees set forth in their counter abstract the following concerning the $700.00 excess:

"Mr. Patterson: Will you stipulate that you have not paid the Laytons or anybody on their behalf, anything for their equity?

"Mr. Hurley: . . . I think we can stipulate to that."

Under the rules of this court it is incumbent upon the appellants to print an abstract of the record which shall reproduce such portions thereof as it is necessary to read in order to arrive at a full understanding of the questions presented for review. In this respect appellants have failed. Error is never presumed and it is incumbent upon the party complaining to establish affirmatively that error was committed. (*Manville v. Gronniger,* 182 Kan. 572, 322 P. 2d 789; *Quivira, Inc. v. Quivira Co., Inc.,* 173 Kan 339, 245 P. 2d 972; and *Vaughn v. Taylor,* 180 Kan. 190, 302 P. 2d 1004.)

The judgment for appellees indicates a general finding on behalf of appellees. It is settled that a general finding made by a trial court determines every controverted question of fact in support of which evidence has been introduced. Further, a general finding by the trial court raises a presumption that it found all facts necessary to sustain and support the judgment. (*Dryden v. Rogers,* 181 Kan. 154, 309 P. 2d 409, and cases cited therein.) We are thus compelled to conclude that upon all the evidence presented the trial court made findings which were sufficient, under the law herein reviewed, to sustain the judgment for punitive damages.

The judgment of the lower court should be and hereby is affirmed.

Jackson, J., not participating.